### The Baltimore & Ohio Rail Road Company *vs.* Brice J. Worthington.

Negligence: Rail Roads: Province of Court and Jury.—A railway train was thrown from the track by the rail being displaced at a switch. The switch was in a position where the switch indicator could not be seen by the engineer in time to prevent an accident, and there was no switch-tender stationed at that point. In an action for damages brought by a passenger who was injured, Held:

1st. That the injury to the plaintiff was presumptive evidence of negligence on the part of the defendants, and it was incumbent on them to prove that they were not negligent, in order to discharge themselves from liability.

2nd. That the jury were correctly instructed,—that it was a question for them to determine from all the evidence, whether the injury to the plaintiff arose from any neglect on the part of the defendants or their agents, and if they should find that the injury was the result of an accident or act against which humane care and foresight could not guard, and was not the result of negligence, in any degree, on the part of the defendants, then the plaintiff was not entitled to recover.

3rd. That the jury were correctly instructed, that in determining these questions they were to have regard to the character of railway transportation.

Appeal from the Superior Court of Baltimore City :

This was an action brought by the appellee against the appellant, to recover damages for injuries sustained while riding as a passenger over the road of the appellant, on a train which was thrown from the track. The case is very fully stated in the opinions of the several Justices of this Court by whom the case was heard.

The cause was argued before Bowie, C, J., and Bartol and Cochran, J.

*J. H. B. Latrobe*, for the appellant :

The Court below erred in substituting its own instructions for those asked for by the defendants.

The first inquiry is as to the difference between the two sets of instructions. The difference, it is contended, is this fundamental and vital one. The defendants' instructions would have given to the jury the law applicable to the case, leaving it to the jury to find the facts. The Court's instruction gives no law to the jury, virtually, but leaves it to the jury to settle, for the particular case, both the law and the facts, which is done when it is left to the jury to say whether the injury arose "from any neglect on the part of the defendants."

It is very true that, in ordinary parlance, "neglect," is a fact; but technically, and in the present connection, this is not so. Neglect, here, is a question of both law and fact; and it was the duty of the Court below to have separated the law from the fact, and deciding the one, to have left the other only to the jury. Had the defendants' instructions been given, this would have been done, and the failure to do so is the error now sought to be repaired.

Railroad companies are under certain obligations to the public, irrespective of the facts in any particular case, and which, when explained to the jury, furnish a certain key to the verdict. What these are, the Court here did not tell the jury. The Court told the jury that their verdict must be for the plaintiff, if they believed he was injured on the particular occasion, of which there was no doubt; unless the defendants show that they were not in fault; but the Court gave the jury no standard by which to determine whether the defendants were in fault or not.

It is true that the Court say, the jury must look in this connection to the character of railroad transportation; but the Court do not say in what respect, though the reference

to the switch-tender, that immediately follows, warrants the conclusion, that it is to him and to his duties that reference is made. The instruction here, is, to say the least, indefinite.

What is asked, now, of the Court of Appeals, is, that it shall declare it to be the duty of the Court below, to instruct the jury, as matter of law, in regard to the obligations of the railroad companies to the public, looking to the question of negligence, and declaring what negligence is. And the best illustration of the defendants' views in this regard, is furnished by the instructions asked for in their behalf.

These instructions assume the right of the defendants to employ a speed customary on railroads for passenger trains to be a matter of law, leaving it to the jury to find, however, that they were traveling at such a speed; and they admit as matter of law, that there must be no defect in the road or the machinery or any neglect or misconduct in the agents, leaving to the jury the fact, whether there was either.

In rejecting the defendants' second instruction, there seems to have been clear error. The rejection of this instruction made the defendants responsible for the act of a wrong-doer, of which they had no notice, which could not have been anticipated, and which, when seen, it was impossible to obviate. The refusal of the 2nd instruction places the railroad companies in the category of common carriers of merchandize, making them insurers of life and limb in the one case, as they are of property in the other. The books are full of cases in this connection. The leading one is *Stockton & Stokes vs. Salstonstall*, in 13 *Peters*, 181, which it is believed fully sustains the views here taken. The Court there instead of leaving the case generally to the jury on the question of negligence, confines it to the facts in regard to the driver's competency, it being one of the obligations of the stage owners to have a competent driver who uses proper skill. This obligation was matter of law

decided by the Court; whether it was complied with, was a matter of fact left to the jury. In the case of *Crofts vs. Waterhouse*, (3d *Bingham*,) 11 *Eng. C. L. Rep.*, 119, referred to in *Redfield on Railways*, 325, the views of the defendants are still further sustained.

So in the case of *Curtis vs. Drinkwater*, 2 *Barn. & Adol.*, 169, (22 *Eng. C. L. Rep.*, 57,) cited at the same page of *Redfield*, it is said: "The obligation of a stage proprietor in regard to conveying passengers safely, has reference to the team, the load, the state of the road, as well as the manner of driving." See also *Sharp vs. Grey*, 9 *Bing.*, 457, (23 *Eng. C. L. Rep.*, 331.)

In Maryland, the views of defendants are fully corroborated by the case of *Stockton vs. Frey*, in 4 *Gill*, 414, where the plaintiff's first prayer, which was granted by the Court below, and sustained on appeal, instead of leaving the question of negligence generally to the jury, as has been done in the present case, states the obligations of the stage owners as matter of law, and confines the jury to the facts in connection therewith. This authority is full up upon the points now in dispute.

In the case lately decided in this Court, of *Ewalt & Myers vs. Harding & Hopkins*, 16 *Md. Rep.*, 160, the general principle now contended for was fully sustained. The Court of Appeals reversing the Court below, declare it to be well settled, that whether diligence has been observed, is a question to be decided by the Court on facts to be found by the jury; or, which is the same thing, that it is the duty of the Court, when asked, to declare what is the standard of diligence, leaving it to the jury to say whether the facts show that the party has come up to it.

Negligence is a question of law growing out of the facts to be passed upon by the Court. *Steam Nav. Co. vs. Hungerford*, 6 *G. & J.*, 291. What amounts to negligence is a question of law. *Herring vs. Wil. & Bal. R. R. Co.*, 10 *Iredell*, 407. *Moore vs. Cent. R. R. Co.*, 4 *Zabriski*, 269. *McKenney vs. Neil*, 1 *McLean*, 550, 552. *Maury vs. Tal-*

*madge,* 2 *Id.,* 165, 167. *Ingalls vs. Bills,* 9 *Met.,* 1. *Hegeman vs. R. R. Co.,* 16 *Barb.,* 353. *Brooks vs. R. R. Co.,* 25 *Id.,* 600.

With regard to the second instruction, its refusal, making as it does the defendants insurers, is so clearly against the well known current of authority, that a citation of cases is deemed altogether unnecessary.

*George H. Williams,* for the appellee, argued:

1. That the instructions of the Court are in exact conformity with the law, as pronounced by the Court of Appeals in the case of *Stockton vs. Frey,* 4 *Gill,* 416, 423, and were as favorable to the appellant as it could have desired; that they covered the whole case, and therefore it was not error to reject the appellant's prayers, even though in themselves correct. *Pettigrew vs. Barnum,* 11 *Md. Rep.,* 451. *Mutual Safety Ins. Co. vs. Cohen,* 3 *Gill,* 481. *Stokes vs. Saltonstall,* 13 *Peters,* 191. *B. & O. R. R. Co. vs. Resley,* 14 *Md. Rep.,* 444. *Keech vs. Balto. & Wash. R. R. Co.,* 17 *Md. Rep.,* 32. *McElroy vs. R. R. Co.,* 4 *Cush.,* 400. *Steamboat New World vs. King,* 16 *How.,* 474.

2. That the Court properly rejected the defendant's first prayer:

(1st.) Because the instruction of the Court covered it.

(2nd.) Because it was calculated to mislead the jury, inasmuch as it assumes their customary speed not to have been reprehensible, and assumes also that the company were not bound to protect their road and guard it from the misconduct of others, even though such protection was perfectly feasible, and the prayer improperly restricts their legal liability.

3. That the defendant's second prayer was properly rejected, as well for the foregoing reasons as that there was no evidence to go to the jury on which it could have been based. There was not a particle of evidence in the cause from which the jury could have inferred any wrongful act contributing to the accident, by the misplacing of the

switch, on the part of any one not connected with the defendant. There was no proof tending even to show that any human being had purposely deranged the lock or switch. The prayer is also faulty, because it assumes that the company were to be exonerated if the misplacement "could not have been anticipated, and when visible could not have been obviated by the utmost care and diligence."

Accidents would rarely, if ever happen, if they were anticipated; and the evidence in this cause conclusively demonstrates the absurdity of relying on an "indicator" for warning at a switch, when the indicator is only visible at two hundred and fifty yards distance, and at a point on a descending grade, where, an experienced engineer, Galloway, in the company's service eighteen years, says, a train could not be stopped under one thousand yards. This indicator is no protection at any time to trains coming from Washington at the customary speed of this company's train—the road is to them as safe without it as with it; and so long as the company rush their trains around a curve at such velocity as to make all precautions practically useless, it will be contended that they are liable in law for all accidents at that switch; and it is respectfully submitted, after the warning given by this case, they will be liable in morals also.

From the evidence in the record, there is scarce room for doubt, that had an experienced hand carefully locked the switch, or if the switch had not been so fatally located, or when so located, if the company's trains were not rushed around a curve at such velocity as to make all precautions perfectly useless for the avoidance of existing danger, even when seen, then this accident would not have happened, and this action would not have been instituted.

4. Negligence is a question of fact for the jury. 2 *Stark. Ev.*, 728. *Redfield on Railways*, 333. *Pierce on Am. Railways*, 282, 284 & 357. *Aldridge vs. Gr. Wes. Railway Co.*, 3 *Man. & Grang.*, 2, 515, (42 *Eng. C. L. Rep.*, 272.) *Vaughan vs. Menlove, Bing. N. C.*, 468, (32 *Eng. C. L. Rep.*, 208.) A

*Harrington,* 253. *Md. Dig.,* 660. *Cent. R. R. Co. vs. Moore,* 4 *Zabriski,* 828. *Huyett vs. R. R. Co.,* 23 *Pa. Rep.,* 374. 27 *Vt. Rep.,* 49. *Macon & Western R. R. Co. vs. Winn,* 26 *Ga. Rep.,* 250. *Beers vs. Housatonnic R. R. Co.,* 19 *Conn.,* 566. *Bulkley vs. N. Y. & N. H. R. R. Co.,* 27 *Conn.,* 459. *Park vs. O'Brien,* 23 *Id.,* 347. *Henderson vs. Mayhew,* 2 *Gill,* 400. *Edwards vs. Balto. Fire Ins. Co.,* 3 *Id.,* 189. *Keech vs. Balto. & Wash. R. R. Co.,* 17 *Md. Rep.,* 32.

In many of these cases there is a distinction made between cases of admitted and disputed facts. Generally, where the facts are admitted, the question is a mixed question of *law* and *fact* for the Court and jury. In disputed cases it is always a question for the jury.

BARTOL, J., delivered the following opinion, in which COCHRAN, J. concurred :

In my opinion the appellants have no good cause to complain of the ruling of the Superior Court in this case.

Nothing is better settled, than that a judgment will not be reversed on account of the rejection of prayers, even though correct in themselves, if the instructions given to the jury are correct, covering the whole case, and giving the law to the jury, as favorably for the appellant as he is entitled to ask. 3 *Gill,* 481, 482. 11 *Md. Rep.,* 451. 14 *Md. Rep.,* 444. 13 *Peters,* 191.

That rule seems to me to be conclusive of the present appeal. The appellee, who was the plaintiff below, was a passenger on the railroad of the appellants, in the afternoon of the 7th of July 1856. The train ran off the track at a switch, used occasionally by dirt trains, and the plaintiff was seriously injured by the accident, and instituted this suit to recover damages for the injury.

The evidence shows that the train was thrown off by the rail on the main track being displaced at the switch. It appears also from the evidence that the switch was at or near a curve, and on approaching it, in the direction the

appellee was traveling, the indicator could be seen by the engineer, some of the witnesses say at the distance of one hundred and fifty yards, others say two hundred and fifty yards; and that a train running at the usual speed of twenty-five miles an hour could be stopped in the space of from three hundred to five hundred yards, or according to the testimony of some of the witnesses, of one thousand yards. It is clear however from all the testimony, that in the position this switch was placed, the indicator could not be seen by the engineer upon a passing train, in time to prevent an accident, even if the indicator showed the misplacement of the switch. There is evidence in the cause showing that in this instance the lever of the switch, or indicator, was in the position it would have occupied had the track been safe, and therefore when seen by the engineer from the train, gave no sign of the danger. How it got into that position is not explained by the testimony.

In this state of facts the Superior Court instructed the jury substantially as follows:

1st. That the injury to the plaintiff was presumptive evidence of negligence on the part of the defendants, and it was incumbent on them to prove that they were not negligent, in order to discharge themselves from liability.

2nd. That it was a question of fact for the jury to determine from all the evidence in the cause, whether the injury to the plaintiff arose *from any neglect* on the part of the defendants or their agents, and if the jury should find that the injury in question was the result of an accident, or act against which human care and foresight could not guard, and was not the result of negligence in any degree, on the part of the defendants, then the plaintiff was not entitled to recover.

3rd. That in determining these questions, the jury were to have regard to the character of railway transportation.

And 4th. That if they found there was no person in charge of the switch, and that the presence of such person might have prevented the accident; still the plaintiff is not, for that reason, entitled to recover; unless the jury should

find that the want of such switch-tender was an act of negligence on the part of the defendants.

I have stated the substance of the instruction, omitting the formal parts, which properly left the facts to be found by the jury; and, in my judgment, there is no part of them of which the appellants have any right to complain.

The first proposition I do not understand to be controverted. The case of *Stokes vs. Saltonstall*, 13 *Peters*, 181, and *Stockton vs. Frey*, 4 *Gill*, 414, conclusively establish the law; that in such case the occurrence of the accident is *prima facie* evidence of negligence on the part of the defendants, throwing upon them the *onus* of rebutting the presumption, by proving there was no negligence. Of course that can be done only by proving the facts and circumstances explaining the cause of the accident, showing it to be such as could not have been guarded against by the utmost care and diligence; or in other words by proving, in the language of Chief Justice Shaw, "the most exact care and diligence, not only in the management of the trains and cars, but also in the structure and care of the track, and in all the subsidiary arrangements necessary to the safety of the passengers." 4 *Cushing Rep.*, 402.

This is precisely the rule laid down in the Court's instruction here, as embodied in the 2nd and 3rd proposition above stated. The jury were told that if the injury was the result of an accident, or an act against which human care and foresight could not guard, and was not in any degree the result of negligence, then the plaintiff was not entitled to recover. Much objection was made by the appellants in the argument, to this part of the instruction, upon the ground that it extended their liability beyond the obligations imposed on them by law, and would have the effect of destroying altogether the transportation of passengers by railroads.

But the very words of this instruction were used by Sir James Mansfield, C. J., in the case of *Christie vs. Griggs*, 2 *Camp. R.*, 81; where, in speaking of the obligation for

the safe carriage of passengers, he says: "His undertaking, as to them went no further than this, that *as far as human care and foresight could go*, he would provide for their safe conveyance." This language is cited with approbation by the Court of Appeals in *Stockton vs. Frey*, and in that case the defendant had asked for an instruction in the words used by the judge in this case, which the Court of Appeals said it was error to refuse. It is a little remarkable that the instruction complained of here, as unduly enlarging the defendant's liability, was considered by the Court in *Stockton vs. Frey*, as an important qualification to the plaintiff's first prayer in that case, materially beneficial to the defendant.

But apart from the direct sanction to the language here employed, given in the case of *Stockton vs. Frey*, I am of opinion as the result of the authorities cited, as well as from sound reason and public policy, that the measure of responsibility of railroad companies for the safe carriage of passengers, is correctly stated by the Superior Court in this case, especially when accompanied with the important qualification, that in passing upon the question of negligence, "the jury were to have regard to the character of railway transportation;" necessarily subject to greater perils and risks than attended the old, slower and simpler modes of conveyance.

With reference to the last part of the instruction, relating to the switch, which in this case was the cause of the accident, the appellants have no just cause to complain; the instruction, in my opinion, was more favorable to them than they were entitled to ask. The Court left it to the jury to decide whether the absence of a switch-tender at that place was an act of negligence on the part of the railroad company. Looking at the facts of this case, as disclosed by the evidence, I should have little hesitation in declaring, as matter of law, that the failure of the company to have a switch-tender at that place, was an act of gross and culpable negligence, which would render the defendant liable for the

consequences of such an accident as occurred in this case, if the jury should find that the presence of a switch-tender might have prevented it.    Since the introduction of *indicators* at switches on railways, it could hardly be successfully contended that a railroad company could escape legal responsibility for the consequences of neglecting to provide so important and useful a safeguard against accidents.    But what is the use of an indicator at a switch, which cannot be seen by the engineer in time to provide against the consequence of its being out of place?    If a railroad company, for its own convenience, makes a switch at a place where an indicator is of no use, it would seem to me that even ordinary care and prudence would require them to employ at such a place, a person to attend to the proper adjustment of the switch.    In this case the question of negligence in this particular was left to the jury, and furnishes no ground for a reversal of the judgment on this appeal.

The view I have taken of this case, renders it unnecessary to discuss the prayers offered by the appellants, because the same propositions being substantially given to the jury, in an instruction covering the whole case, their refusal, as I have said, would be no cause of reversal.

I consider the first prayer of the appellants as asserting the same measure and degree of obligation on the part of the company as that contained in the Court's instruction. All that it was proper for the Court to do in this case, was to furnish to the jury for their guide, the legal rule or standard by which the obligation of the company was to be determined—that is, to prescribe the degree of care and diligence required by law, and then to leave the fact of negligence, or want of care, for the jury to decide from the evidence in the cause; and it seems to me, notwithstanding all that has been urged in the argument by the appellants' counsel, that the rule in this respect, prescribed by the Court's instruction, is quite as definite and certain as that contained in the first prayer.

The second prayer of the defendants was properly refused,

because there was no evidence upon which it could be based. The bill of exceptions contains no testimony tending to show any wrongful act on the part of any one, not connected with the defendants, contributing to the accident by displacing the switch. But if I am in error in this, still the defendants had the benefit of that defence, under the Court's instruction, which exempted them from liability *for any act* against which human care and foresight could not guard; and farther than that they were not entitled to exemption.

Finding no error in the ruling of the Superior Court, I think the judgment ought to be affirmed.

COCHRAN, J., delivered the following opinion, in which BARTOL J. concurred:

I do not concur with the Chief Justice in the conclusions he has expressed. Negligence, in the ordinary legal sense, imports an absence or want of such care as the law requires should be observed in the performance of any given undertaking, and generally speaking, is a fact, the finding of which is for the jury, although the Court may declare the legal nature and extent of the duties incident to the undertaking, as well as those facts which by inference of law are essential to its performance. The opinion of BEST, J., in *Crofts vs. Waterhouse,* 3 *Bing.,* 314, illustrates very clearly the ground upon which the Court may proceed in such a case, as well as the principle by which its action should be limited and controlled. There the undertaking was to carry passengers by a stage-coach, and the Court, in declaring the duty of the carrier, very properly said that he was bound by his undertaking to provide a coach and harness of sufficient strength and properly made, steady horses, a skillful driver well acquainted with the road, and with lights by night, and that he would be liable by any default in either of these things, for any damage that might happen. The rule here stated is unquestionably an appropriate one, in any case where the negligence alleged may be deduced from the absence of any fact, which the law of the

contract presupposes and requires should be shown.   There is, however, a large class of cases where the question of negligence is more complex, and where it may be determined from facts and circumstances of a character too uncer-tain for any legal inference, and consequently, where the finding of the jury should be aided rather than controlled by instructions from the Court.   The jury may be directed as to the degree of care required, and generally as to the law of the contract or undertaking, but negligence in that class of cases, is nevertheless a fact which the jury, when informed as to the law, may deduce from facts and circum-stances lying beyond the province of judicial instruction. If the law laid down by the Court furnishes a test or stand-ard which the jury may apply in passing upon the evidence, and which thereby may enter into and constitute an appre-ciable element of the fact to be found, the question is a mixed one, and the jury should so find as to give the in-structions their proper legal effect.   The question of neg-ligence in this case was considered to be one of that class. The evidence shows that the accident in question occurred while the appellee was being transported upon the appel-lant's road, that it was caused by the misplacing of a switch, which the train, moving at the usual speed of twenty-five miles an hour, approached by a curve on a descending grade, and that the switch, as approached, was not visible from the lookout of the engineer at a greater distance than one hundred and fifty yards.   The skill and care of the agents in charge of the train, do not appear to have been impeached nor brought in question by any evidence in the case, nor was there any tending to show that the track or machinery was defective in structure, strength or sufficiency, except so far as related to the switch by which the accident was caused.   The Court instructed the jury on this evidence, that the injury to the appellee raised a presumption of neg-ligence which imposed on the appellant the burden of show-ing, that the accident was unavoidable and could not have been prevented by any degree of care, and further, that it

was for the jury to determine from all the evidence in the case, whether there was negligence or want of care, the nature of railroad transportation being considered, and even if they should find that a switchman might have prevented the accident, yet that the appellee could not recover, unless they should find that the failure to employ a switchman was an act of negligence. There was no question in regard to the degree of care required, for the rejected prayers, as well as the instructions given by the Court, both assume that the appellant was bound to observe the utmost care and diligence in the structure of its road and machinery, and management of its trains. The degree of care was prescribed by the Court, in negative terms it is true, but it was as exact and certain as it would have been in the affirmative form used by the appellant. The terms "utmost care and diligence," mean all the care and diligence possible in the nature of the case, and it must be assumed, if the accident complained of could not have been prevented by the utmost care and diligence, that it was, in the language of the Court, one against which "human care and foresight could not guard." These forms of expression have been used in many cases as equivalent, and I understand them to have the same legal import and effect. *Christie vs. Griggs*, 2 *Camp.*, 79. *Ingalls vs. Bills*, 9 *Met.*, 1. 4 *Cush.*, 402. *Stockton vs. Frey*, 4 *Gill*, 406. But the appellant objected to these instructions, chiefly because the injury to the appellee was declared to be presumptive evidence of negligence without prescribing any legal measure of proof by which that presumption could be rebutted; and further, because they did not sufficiently instruct the jury, as matter of law, what negligence is, nor what the appellant's duties and obligations were. It was suggested that the appellant's prayers were so drawn as to remedy these defects, and that the Court erred for that reason in rejecting them, but I think the instructions of the Court are not open to the objections made. Had the case been one in which negligence on the part of the

appellant could have been deduced or found from the absence of any fact or circumstance which by inference of law was essential to the performance of its undertaking, these objections might have proved fatal, for, as we have before remarked, a failure to show any particular which the law contemplates as necessary to the performance of the undertaking, would have subjected the appellant to liability for any damage that might have occurred. In that case negligence would have been an inference of law with which the jury could have nothing to do, further than to find the facts supporting the inference, although it would have been the duty of the Court, in directing the jury, to have stated such facts as the law of the undertaking required should be shown. The objections urged here seem to be founded on principles applicable only to that state of case, for they proceed on the theory that it was necessary for the Court, in directing the jury, in regard to the degree of care required, to prescribe the measure of proof necessary to establish the fact of negligence, as well as to rebut the presumption of it, arising from the proof of injury to the appellee. There can be no mistake in assuming that principles, which govern in finding negligence when it is purely a question of law, do not apply when it arises as a mixed one of law and fact. The Court said very properly, that the injury to the appellee as shown by the evidence raised a presumption of negligence, that cast on the appellant the burden of proving that the accident was not the result of negligence in any degree. The appellant does not dispute the first part of the proposition that a presumption of negligence was raised by proof of the injury, but, insists that the Court should have prescribed a measure of proof by which that presumption could have been rebutted. We may observe here, that the standard of care required by the law of the case was correctly stated by the Court, and that, with that legal test, the question of negligence was properly left to the jury upon the evidence of the cause and circumstances of the accident. The mixed character of the

question was not changed by the presumption arising from
the proof of the injury, as it was still for the jury to find,
by applying the same legal test to the evidence in the case,
whether proper care had been observed.   The relation of
the parties to the question was changed, it is true, for by
shifting the burden of proof it became the duty of the ap-
pellant to show that the accident was such as could not
have been prevented by human foresight and care, or stat-
ing it in the affirmative form, that the utmost care and
diligence had been observed.   Assuming, as I think we
must do, that the exercise of proper care by the appellant,
was to be found from facts and circumstances of a character
too uncertain for any inference of law, and from which the
jury alone could make the proper deduction, then how was
it possible for the Court to determine, as matter of law, the
measure of proof required to rebut the presumption of neg-
ligence, which fact, by the presumption, rested in evidence,
the effect of which the Court had neither means nor power
to ascertain? The measure of rebutting proof in any given
case, is usually determined by the legal effect or result of
the evidence to be opposed, and in prescribing the measure
of such proof as was insisted on here, the Court would have
had to determine the effect of evidence, which, as we have
seen, was not within the province of judicial inference.
The thing to be done was to satisfy the jury that there had
been no want of care, or in other words, that the utmost
degree of care and diligence had been exercised, and the
amount of evidence necessary to effect that result was the
measure required to exonerate the appellant from liability.
The opinion of the Court in the case of *Stokes vs. Saltonstall*,
as we understand it, establishes no principle inconsistent
with the views here expressed.   The question was raised
there, upon an instruction given by the Court below, that
it was incumbent on the defendant, in order to meet the
*prima facie* case of the plaintiff, to show "that the driver
was a person of competent skill, of good habits, and in
every respect qualified and suitably prepared for the busi-

ness in which he was engaged; and that he acted on the occasion *with reasonable skill and with the utmost prudence and caution,*"—"and if the disaster in question was occasioned by the *least negligence or want of skill or prudence on his part,* then the defendant was liable." This instruction was held good, and it is said here that it prescribes a measure of proof for rebutting the presumption of negligence. We do not so understand it, for according to our apprehension, it was an instruction that required the defendant to satisfy the jury that there was no negligence, want of skill or prudence on the part of the driver, without regard to any legal measure of proof by which those facts could be established. And in that respect the instruction is identical with that given by the Court in this case. Negligence on the part of a carrier will be presumed from the proof of injury to a passenger only in respect to the causes of the injury, and to rebut that presumption, it is necessary for the carrier to show and so explain the cause of the injury as to satisfy the jury that it was unavoidable, and could not have been prevented by human care and foresight. *Carpue vs. Lon. & Brigh. Rail. Co.*, 3 *Eng. R. & C. Cases*, 508.

I think the Court gave the appropriate instructions for the guidance of the jury in passing upon the evidence in this case. The standard of care required was stated in terms sufficiently comprehensive and accurate to enable the jury to determine whether the appellant's duties were performed, and consequently to find whether the injury suffered by the appellee resulted from any default or want of care in the performance of the undertaking to transport him safely. For these reasons I think there was no error in rejecting the prayers of the appellant, and that the judgment should therefore be affirmed.

Bowie, C. J., dissented, and filed the following opinion:
This case has been argued with a zeal, ingenuity, ability

and research, worthy of the important and delicate questions involved. It presents the nature and extent of the obligations assumed by railroad companies as passenger carriers, in their transportation, and the relative duties of the Court and jury in ascertaining and fixing their liability. The appellee sued the appellants for damages for injuries received by him whilst traveling in the cars from Washington to Baltimore, on the 7th June 1856. At the trial below, the defendants asked the Court to instruct the jury as follows:

" That if they believed from the evidence that the plaintiff was injured while a passenger, in the cars of the defendant, from Washington to Baltimore, on the 7th July 1856, and that said injury was caused by said cars running off the track at a dirt-switch near Elkridge Landing, and that at the time of the happening of such accident, the train of cars in which the plaintiff was, was traveling at a customary speed, and that the defendants and their agents used, and were using, the utmost care and diligence, looking to their road, machinery and agents, and required for the safe transportation of the plaintiff, and that the accident was not due to any defect in the road or the machinery, or neglect or misconduct of their agents, then the plaintiff was not entitled to recover.

" That if the jury found that the accident was caused by the wrongful act of a party or parties not connected with the defendants in any manner, in misplacing the switch spoken of in the evidence, and that the condition of the rail and switch when so displaced, if the jury shall believe from the evidence that the accident was attributable thereto, was such as could not have been anticipated, and when visible could not have been obviated by the utmost care and diligence on the part of the defendants, or their agents, then the plaintiff was not entitled to recover."

Which the Court rejected, and *ex mero motu*, gave the following:

"That if they found from the evidence that the injury of which the plaintiff complained in this case occurred as

stated by the witnesses, and that the plaintiff was thereby damaged, there was presumptive evidence of negligence on the part of the defendants, and that it was incumbent on them to prove that they were not negligent, in order to discharge them from liability for the injury thus occurring to the plaintiff, and that it was a question of fact for the jury to determine, from all the evidence in the case, whether the injury of which the plaintiff complained arose from any neglect on the part of the defendants or their agents, and that if the jury should find that the injury in question was the result of an accident or act against which human care and foresight could not guard, and was not the result of negligence in any degree on the part of the defendants, then the plaintiff was not entitled to recover.

"That in determining whether the accident whereby the plaintiff was injured, if the jury should find such injury, was the result of an accident or act against which human care or foresight could or could not guard, the jury were to have regard to the character of railway transportation, and that it was not necessary that the jury should find for the plaintiff, if they found there was no person in charge of the switch spoken of in evidence, and that the presence of such person might have prevented the accident, if the jury should believe from all the circumstances that the want of such switch-tender was not an act of negligence on the part of the defendants."

The value of the right of trial by jury in civil cases, depends mainly upon the observance of the boundaries between law and fact, and the effective exercise of the right of the Court to instruct the jury upon all questions of law arising upon the facts submitted to them.

The lines of demarcation between questions of law and questions of fact, are often shadowy and almost indefinable. As these fade into each other, the more necessary the exercise of the right of instruction on the part of the Court. The reports are full of irreconcilable decisions as to the classification of these questions.

Whether negligence or the want of reasonable care is to be determined by the Court or by the jury, is a question which has been much discussed. In *Doorman vs. Jenkins,* 3 *Adol. & Ellis,* 256, the judges all concurred in saying no general rule could be laid down. That in some cases the negligence depended entirely upon the law, and then it was for the Court; in others, it depended on facts or inferences from facts, and then it was for the jury. This is but equivalent to what we have before affirmed, that where the facts are established, it is the duty of the Court to declare the law arising from them; but where the facts are disputed, or the inference to be drawn from them is questioned, it is the duty of the jury to determine them under instructions of the Court. The *Central R. R. Co. vs. Moore,* 4 *Zabriski,* 832, 833.

On the other hand, in 1 *Eng. Railway Cases,* 852, *Aldridge vs. Great W. R. Co.,* 19 *Con.,* 570; and *Park vs. O'Brien,* 23 *Con.,* 347, it was held, "whether there was negligence, or a want of care of whatever degree, was from its very nature a question of fact, and therefore to be decided by the jury." This Court said in *Keech vs. Balt. & Wash. R. R. Co.,* 17 *Md. Rep.,* 47: "These instructions submitted to the jury the question of negligence on the part of the plaintiff, as well as on the part of the defendant, which was a proper subject for them to pass upon." It does not appear that any question was raised as to the propriety of the submission, or whether what constituted negligence was defined. Whether there be any evidence or not, is a question for the judge; whether it is sufficient evidence, is a question for the jury.

To obviate the dangers incident to submitting mixed questions of law and fact, the rule is laid down in the text books, that where the question is mixed, "so intimately blended, as not to be easily susceptible of separate decision, they are submitted to the jury, who are first instructed by the judge in the principles and rules of law by which they are to be governed in finding a verdict, and these instruc-

tions they are bound to follow.  1 *Greenlf. Ev.*, *sec.* 49, *part II.*, *ch.* 1.  The corollary of this rule is, that the Court should instruct in such terms as will inform the jury what the law requires to be found upon any such mixed question.  Any instruction which is calculated to mislead the jury, is cause of appeal.  *Clements vs. Smith's Adm'rs*, 9 *Gill*, 160.

The remarks of Justice Story on the relative obligations of Court and jury, are very apposite:

" It is the duty of the Court to instruct the jury as to the law, and it is the duty of the jury to follow the law as it is laid down by the Court.  This is the right of every citizen, and it is his only protection.  If the jury were at liberty to settle the law for themselves, the effect would be not only that the law itself would be most uncertain, from the different views which different juries might take of it, but in case of error there would be no remedy or redress by the injured party, for the Court would not have any right to review the law as it had been settled by the jury.  Indeed it would be almost impracticable to ascertain what the law as settled by the jury actually was.  On the contrary, if the Court should err in laying down the law to the jury, there is an adequate remedy for the injured party, by a motion for a new trial, or a writ of error, as the nature of the jurisdiction of the particular Court may require."  *United States vs. Babtiste*, 2 *Sumner*, 243.  1 *Greenlf. Ev.*, 64 *note.*  The judge is to inform the jury as to the degree of *diligence or care or skill*, which the law demands of the party, and *what duty it devolves on him*, and the jury are to find whether that duty has been done.  *Hunter vs. Caldwell*, 11 *Jur.*, 770.  *Burton vs. Griffith*, 11 *M. & W.*, 817.  *Facey vs. Hurdom*, 3 *B. & C.*, 213.  *Stewart vs. Cauty*, 8 *M. & W.*, 160.  *Parker vs. Palmer*, 4 *B. & Ald.*, 387.  *Pitt vs. Shew*, *Ib.*, 206.  *Mount vs. Larkins*, 8 *Bing.*, 108.  *Phillips vs. Irving*, 7 *M. & Gr.*, 325.  *Reece vs. Rigby*, 4 *B. & Ald.*, 202.

If the propositions established by the preceding authorities are correct, the defendant exercised a legal right in

submitting the instruction which he asked the Court to give the jury in this case. The facts enumerated were left to the jury to find upon the evidence in the cause; testimony *tending to prove them* was offered, and the only remaining inquiry is, was the conclusion of law based on them correct. That is to say, if the defendants, at the time of the accident were traveling at a customary speed, and were using the utmost care and diligence looking to their road, machinery and agents, and required for the *safe transportation of the plaintiff*, and the accident was not due to any defect in the road or the machinery, or neglect or misconduct of their agents, then the plaintiff was not entitled to recover. The nature and extent of the responsibility of passenger carriers, is stated accurately and succinctly in *Story on Bailments, sec.* 601, thus: "It is certain that their undertaking is not an undertaking absolutely to carry safely. They are bound only to due care and diligence in the performance of their duty. But in what manner are we to measure this due care and diligence? Is it ordinary care and diligence which will make them liable only for ordinary neglect, or is it extraordinary care and diligence, which will make them liable for slight neglect? As they undertake the carriage of human beings whose lives, and limbs and health are of great importance, as well to the public, as to themselves, the ordinary principles in criminal cases, where persons are made liable for personal wrongs and injuries arising from slight neglect, would seem to furnish the true analogy and rule. It has been accordingly held, that the passenger carrier, binds himself to carry those whom he takes into his coach, as far as human care and foresight will go; that is, *for the utmost care and diligence of very cautious persons.*" *Harris vs. Coster,* 1 *Car. & Payn,* 636. *Crofts vs. Waterhouse,* 3 *Bing.,* 321. *Astor vs. Heaven,* 2 *Esp. R.,* 533. *Christie vs. Griggs,* 2 *Camp., Rep.,* 79. *White vs. Boulton, Peake R.,* 80. 1 *Blac: Com.,* 662.

"But passenger carriers, not being insurers, are not responsible for accidents, where all reasonable skill and

diligence has been employed, when every thing has been done which human prudence can suggest, accidents may happen."

In applying these principles to the transportation of passengers on railroads, some of the highest judicial authorities of the States have expressed themselves as follows: "Proprietors of public conveyances are liable at all events, for the baggage of passengers, but as to injuries to their persons, *they are only liable for the want of such care and diligence as is characteristic of cautious persons.*" *Camden & Amboy R. R. Co. vs. Burke*, 13 *Wend.*, 626. Ch. Justice SHAW thus defines the rule: "The defendants were bound to the most exact care and diligence, not only in the management of the trains and cars, but also in the structure and care of the track, and in all the subsidiary arrangements necessary to the safety of the passengers." *McEllroy & Wife vs. Nashua & Lowell R. R. Co.*, 4 *Cush.*, 402.

Assuming the same degree of diligence and care was designed to be required of railroad companies, as of the owners of stage coaches, in the transportation of passengers, it must be admitted, the force of the original expression, used in the earlier cases, viz: "As far as human care and foresight will go," has been much modified as interpreted in the latter, when reduced to "such care and diligence as is characteristic of cautious persons," or "the utmost care and diligence of very cautious persons."

We are not disposed to relax a rule of law on which depends so much of human life and happiness. If the rate of care and diligence should be proportioned to the value of the lives involved, no human care and foresight would be equal to the precious freight, but the legal standard is that which ensures reasonable, practicable diligence, and imposes no unreasonable burden, the standard adopted as explained by Justice Story, "the utmost care and diligence of very cautious persons."

The defendants' first prayer is but a paraphrase of the

language used in the authorities above cited, adopting the highest standard of liability. It states, affirmatively, the facts which constitute the utmost care and diligence required for the safe transportation of the plaintiff, and requests the Court to instruct the jury, if they find such care and diligence were used, and that the accident was not due to any defect in the road and machinery, or neglect or misconduct of their agents, the plaintiff was not entitled to recover. The learned judge rejected this prayer, substituting those above cited. These instructions are objectionable, not for what they do, so much as for what they do not contain. No measure of care and diligence is given by them to the jury. Interpreted literally, they imply, that all the human mind could devise or human hand execute, was to be required of the defendants, to exempt them from liability for injury to the plaintiff—the jury having regard to the character of railway transportation—with this proviso: "that it was not necessary that the jury should find for the plaintiff, if they found there was no person in charge of the switch spoken of in evidence, and that the presence of such person might have prevented the accident, if the jury should believe from all the circumstances, that the want of such switch-tender was not an act of negligence on the part of the defendants."

The qualifications betray the indefiniteness of the rule and the danger of its application. They leave the measure of legal liability to the vague, undefined conjecture of the jury, of what railway transportation required, with the power to find a tender was necessary at each switch, at the passage of every train, if they deemed "the presence of such person might have prevented the accident," &c.

In *Stokes vs. Saltonstall*, 13 *Peters*, 185, the instructions given by the Court below, and approved by the Supreme Court, were as follows:

1st. "The defendant is not liable in this action, unless the jury find that the injury of which the plaintiff com-

plains, was occasioned by the negligence or want of proper skill or care in the driver of the carriage in which he and his wife were passengers; and the facts, that the carriage was upset and the plaintiff's wife injured, are *prima facie* evidence that there was carelessness or negligence, or want of skill on the part of the driver, and throws upon the defendant the burden of proving that the accident was not occasioned by the driver's fault."

2nd. "It being admitted that the carriage was upset and the plaintiff's wife injured, it is incumbent on the defendant to prove the driver was a person of competent skill, of good habits, and in every respect qualified and suitably prepared for the business in which he was engaged, and that he acted on this occasion with reasonable skill and with the utmost prudence and caution; and if the disaster in question was occasioned by the least negligence, or want of skill or prudence on his part, that the defendant is liable in this action."

It was objected in the argument, that although the facts of the overturning the coach and the injury sustained are *prima facie* evidence of negligence, they did not throw upon the defendant the burden of proving that such overturning and injury were not occasioned by the driver's fault, but only that the coachman was a person of competent skill in his business; the coach properly made, the horses steady," &c.

Commenting on which objection, the Court said, (p. 193:) "Now taking that portion of the first and second instructions which relates to the burden of proof, together, we understand them as substantially amounting to what the objection itself seems to concede to be a proper ruling, and what we consider to be the law; for although in the first it is said that these facts threw upon the defendant the burden of proving that the accident was not occasioned by the driver's fault, yet in the second it is declared, it was incumbent on the defendant, in order to meet the plaintiff's *prima facie* case, to prove that the driver was a person of competent skill, of good habits, and in every respect qualified and suitably prepared for the business in which he was.

engaged, and that he acted on the occasion with reasonable skill and with the utmost prudence and caution."

"This *affirmative evidence, then, was pointed out by the Court* as the means of proving what was in terms stated in the form of a negative proposition before—that is, that the accident was not occasioned by the driver's fault;" which we interpret to mean, that it was not required of the defendant to prove a negative, viz: he was not guilty of negligence, want of care or skill; *but the Court pointed out* what facts it was incumbent upon the defendant to prove affirmatively, to repel the inference of neglect, and establish the presumption that he acted with reasonable skill and the utmost prudence and caution; in other words, held up to the jury a standard by which they could measure the degree of care and skill required by the law to be exercised in the transportation of passengers, and determine whether such requirements had been complied with. The defendant's fourth prayer, in *Stockton vs. Frey,* 4 *Gill,* 416, which the Court in that case decide should have been granted, is couched in almost the identical language of the first instruction given in the case of *Stokes vs. Saltonstall,* as to the finding of "negligence," qualified with the proviso, "if the jury should find the injury resulted from an accident against which human care and foresight could not guard, and was not the result of negligence in any degree, then the plaintiff is not entitled to recover in this case."

This prayer, it should be noted, had been preceded by an instruction or instructions, granted by the Court at the instance of the plaintiff, stating affirmatively what constituted due care and diligence, (*vide* 4 *Gill,* 414,) and the qualification contained in the defendant's fourth prayer, was superadded to that. The defendant could not complain that no standard of care and diligence had been furnished the jury, but the object of his prayer was to instruct the jury that passenger carriers, unlike common carriers, were not insurers and liable absolutely, but were exonerated if the accident was one against which human care and fore-

sight could not guard. The meaning and effect of this instruction on the minds of the jury, are entirely different when announced by the Court "mero motu," after rejecting propositions stating affirmatively facts which constituted "the utmost care and diligence" required by law, and when granted as a qualification of prayers enumerating such facts previously granted. In the first instance, it enlarges the liability of the defendant, and deprives him of the means of proving affirmatively, what was in terms stated in the form of a negative proposition. In the second, such an instruction contracts the defendant's liability and protects him from the consequences of accidents which no reasonable care and diligence could avoid. The substitute granted by the Court assumes the form of a negative proposition, viz: it was incumbent on them (the defendants) to prove that they were not negligent, in order to discharge them from liability, without pointing out affirmatively the facts to be proved to repel the presumption of negligence; and after rejecting a prayer containing such facts, was equivalent to declaring such proof was not sufficient. It thus deprived the defendant of the benefit of such instruction as he was entitled to, and was calculated to mislead the jury as to the mode and measure of evidence.

After reviewing all the prominent English and American cases, from *White & Boulton, Peake's Cases*, 1795, to *Sharp & Grey*, 9 *Bing.*, 457, the Court in the case of *Ingalls vs. Bills & others*, 9 *Metcalf Rep.*, 12, arrive at this conclusion: "If more was intended in *Sharp vs. Grey*, than that a coach proprietor is bound to use the greatest care and diligence in providing suitable and sufficient coaches, and keeping them in safe and suitable condition for use, we cannot agree with them in opinion. To give their language the meaning contended for in the argument, is in fact to place coach proprietors in the same predicament as common carriers, and to make them responsible in all events for the safe conduct of the passengers as far as the vehicle is concerned." Such would be the effect of the instruction

granted by the Court below, taken in connection with its refusal of the defendant's first prayer in this case, converting their liability into a warranty, instead of responsibility for negligence. Wherefore I think there was error in the refusal of the defendant's first prayer and the granting of that given by the Court.

*Judgment affirmed.*

(Decided April 14th, 1864.)