CHARLES DILLINGHAM, RECEIVER, V. JAMES WOOD.

No. 393.

1. **Injury to Passengers—Negligence—Charge.**—A charge of the court to the effect that the failure of the carrier to exercise the "utmost" care and caution in order to avoid causing or doing injury to passengers riding upon his train is negligence in law, is not open to the objection that it required greater care than the law imposes.

2. **Same—Degree of Care.**—While railway companies are not insurers of the safety of their passengers, yet they are held to the highest degree of care to protect them from injury in transportation.

3. **Same—Mixed Trains.**—There is no distinction made by our law as to the degree of care necessary to be used by railway companies in the transportation of passengers, whether on freight, mixed, or passenger trains.

4. **Argument of Counsel—Cause for Reversal, When.**—Whenever, in the argument of a case, counsel departs from the record, and uses improper language that is calculated to influence the jury in rendering a verdict larger in amount than they might otherwise do, and the court does not instruct them to disregard the improper language in considering their verdict, and the verdict is such that it indicates that such language did probably affect them in their action in arriving at a verdict, the cause will be reversed and remanded for a new trial. In this case, counsel for appellee read, in the hearing of the jury, an opinion of the Supreme Court in a case in which a verdict for $5000 was rendered and the judgment thereon affirmed, and compared

the case at bar therewith. This suit was for $5000 damages, and the verdict herein was for the same amount. The court failed to instruct the jury not to consider the remarks of the counsel. *Held*, Ground for reversal.

APPEAL from Navarro. Tried below before Hon. RUFUS HARDY.

*Frost & Blanding*, for appellant.—An attorney engaged in the trial of a cause is recognized as an officer of the court, and the law enjoins upon him, in the conduct of his client's cause, the duty of assisting the court in arriving at such result as comports with justice administered under the rules of law and of the court; and a deviation from such practice is not in harmony with the true administration of justice, and should not be tolerated by the court. Moore v. Moore, 73 Texas, 382; Railway v. Garcia, 62 Texas, 286; Beville v. Jones, 74 Texas, 154; Railway v. Witte, 68 Texas, 296; Willis v. McNeal, 57 Texas, 465; Railway v. Jarrell, 60 Texas, 267.

The practice of law by attorneys is considered a part of the administration of justice, and attorneys are public officers. Richardson v. Railway, 22 How. Pr. (N. Y.), 368; Merrett v. Lambert, 10 Paige (N. Y.), 352; Watters v. Whitemore, 22 Barb. (N. Y.), 593; Thomas v. Steele, 23 Wis., 207.

Railway companies are held only to reasonable care in the conduct and management of trains in transporting passengers; that is, to manage their trains in the customary manner, which is generally found and believed to be safe and prudent. Hazzard v. Railway, 1 Biss., 503; Railway v. Horst, 93 U. S., 291; Railway v. Dickerson, 39 Ind., 317; Railway v. Beaver, 41 Ind., 493.

The use of the superlative expletives "very" and "utmost" exceeded the rule of law in the instruction to the jury defining the care of defendant, which if omitted constituted negligence under the charge of the court. McBride v. Banguss, 65 Texas, 174; Prather v. Wilkens, 68 Texas, 190; Alexander v. Lewis, 47 Texas, 487.

A passenger on a mixed train is entitled to be protected against injury in every way which is reasonably consistent with his safe transportation by the particular means of conveyance so used, and to the same character of protection as if carried on a regular passenger train, but not the same degree of protection from injury from jolts or jerks in stopping or leaving stations. Railway v. Hazzard, 26 Ill., 373; Edgerton v. Railway, 39 N. Y., 227; Railway v. Selby, 47 Ind., 471; Harris v. Railway, 5 West. Rep., 412.

*Croft & Croft*, for appellee.—Where remarks of counsel are provoked by the opposite side, and there is some probability that the verdict was not influenced thereby, there will be no ground for reversal. Moore v. Moore, 73 Texas, 382; Railway v. Garcia, 62 Texas, 206.

The use of improper language before a jury affords cause for reversal only when the preponderance of evidence seems to be against

the verdict, or where the verdict seems excessive, and there appears reason to believe that it may have been affected by such language. Sinclair v. Stanley, 69 Texas, 718; Railway v. White, 80 Texas, 203; Railway v. Irvine, 64 Texas, 529; Railway v. O'Hare, 64 Texas, 600; Delk v. Punchard, 64 Texas, 360; Railway v. Larkin, 64 Texas, 455; Railway v. Witte, 68 Texas, 295; Railway v. Garcia, 62 Texas, 285; Barber v. Hutchins, 66 Texas, 319; Wills & Bro. v. Lowry, 66 Texas, 541; McLane v. Paschal, 74 Texas, 20; Willis & Bro. v. McNatt et al., 75 Texas, 69; Hickey v. Behrens, 75 Texas, 488.

A railroad company that for years has been in the habit of carrying passengers on its local freight trains is required to exercise the highest possible degree of care and diligence to which such trains are susceptible. Railway v. Irvine, 64 Texas, 529; Railway v. Rushing, 6 S. W. Rep., 834; Thomp. Carr. of Pass., 234, sec. 20, and cases cited; Pat. Ry. Acc. Law, sec. 271, and cases cited in note 1, p. 282. As to "utmost care and foresight," see 2 Texas Ct. App. C. C., sec. 706, and cases cited; Railway v. Martin, 2 Texas Ct. App. C. C., sec. 655, and cases cited; Street Railway v. Helm, 64 Texas, 148; Railway v. Davidson, 68 Texas, 370; Railway v. Daugherty, 8 S. W. Rep., 900; Railway v. Lockwood, 18 Wall., 375; Railway v. Finley, 15 S. W. Rep., 266–268; Railway v. Irvine, 64 Texas, 529, and cases cited; Railway v. Lockwood, 17 Wall., 375.

RAINEY, ASSOCIATE JUSTICE.—Appellee sued appellant for damages for injuries to his wife, inflicted while they were passengers on a mixed, or accommodation, train in charge of appellant, his servants, and employes. The train stopped at a station to take on and discharge passengers and freight. While standing, the wife, Martha A. Wood, left her seat to go to the water stand or closet; while she was walking in the aisle, the train started with a sudden jerk which threw her violently against the back of a seat "with such force as to break one or two of her ribs, bruise her hips, shoulders, and sides, and causing injury to her spinal column, causing her to suffer mental and bodily pain and suffering, thereby rendering her helpless and permanently injured." On the trial before a jury a verdict for $5000 was rendered in favor of plaintiff, a motion for a new trial overruled, and an appeal taken.

The part of the court's general charge relating to negligence is as follows: "You are instructed, that it was the duty of defendant to exercise, through such agents, servants, or employes, such care and caution in order to avoid causing or doing injury to passengers riding upon his train as a very prudent and cautious person would under like circumstances have exercised; that is, what is called the utmost care and caution. The failure to exercise such care and caution is 'negligence' in law.

"If while plaintiff's wife was walking or standing in the aisle of defendant's car, the servants, agents, or employes of defendant caused

the car to start suddenly and violently, and without warning, and in so doing were guilty of negligence as above explained—that is, of failure to exercise such care as a very prudent and cautious person would under like circumstancss have exercised in order to avoid causing accident and injury to passengers, and if such negligence caused the plaintiff's wife to sustain the injuries or any of the injuries complained of, then you will find for plaintiff."

Again, in qualifying a special charge asked by appellant and given, the court instructed the jury, "that they are required to use the utmost care in order to avoid making greater or more violent jerks or jolts than are unavoidable, and if the defendant failed to use such care, and thereby the accident and injury was caused, then the defendant is liable. In other words, a passenger riding in a mixed train is entitled to demand from the railroad operatives transporting him the exercise of the utmost degree of care and caution to which such trains are susceptible."

Appellant insists that these instructions required greater care on the part of the servants and employes of appellant than the law imposed. While railroads are not insurers of the safety of their passengers, yet they are held to the highest degree of care to protect them from injury in transportation. In Railway v. Halloven, 53 Texas, 53, Mr. Bonner, Justice, laid down the following rule: "Railroad companies, however, are not insurers of the safety of their passengers further than could be required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding them as would be used by very cautious, prudent, and competent persons under similar circumstances." This rule has been approved by our Supreme Court in a recent opinion delivered by Mr. Brown, Justice, in the case of Railway v. Welch, 86 Texas, 203, who said: "This rule of liability is sustained by the best text writers, and nearly all of the adjudicated cases."

In the cases of Levy v. Campbell, 19 Southwestern Reporter, 438, and in Gallagher v. Bowie, 66 Texas, 265, charges were approved where the jury were told that "the carrier is bound to use the 'utmost care' to provide for the safety of passengers." In the case of Railway v. Worthington, 21 Maryland, 288, the term "utmost care" is defined to mean "all the care and diligence possible in the nature of the case." Railway v. Welch, supra.

Testing the charge in this case by the authorities just referred to, it is not open to the objection urged by appellant. There is no distinction made by our law as to the degree of care necessary to be used by a railroad in the transportation of passengers—whether by freight, mixed, or passenger trains. The refusal of the special charges asked by appellant on this proposition was not error. Railway v. Irvine, 64 Texas, 529.

The first, second, third, and fourth assignments of error relate to the conduct of appellee's counsel in the argument of the case before the

jury.  Various bills of exception were duly reserved, and are in sub-
stance as stated by counsel for appellant in their brief, which state-
ment is as follows:  "Be it remembered, that upon the trial of the
above entitled cause the following proceedings were had:  During the
argument of the law of the case to the court, plaintiff's counsel read
in the presence of the jury and in their hearing, over defendant's ob-
jection, the opinion of the Supreme Court in the case of East Line &
Red River Railway Company v. Rushing, reciting in full said opinion,
that 'the trial of the cause before a jury resulted in a verdict for
plaintiff for $5000;' also, 'they are presumed to know that persons in
feeble health, old, or decrepit, travel on their trains.'  Plaintiff's
counsel then interjected remarks of his own, as follows:  'Just as in
this cause.  The railroad has proved by their conductor that Mrs. Wood
was old and clumsy.'  Defendant's counsel announced to the court his
objection, and that he wished to take a bill of exceptions to the action
of counsel in reading the amount of the verdict and comparing the
case at bar with that of the case he was quoting.  Plaintiff's counsel
thereupon said, 'You are rather late.'  To all of which defendant ex-
cepts, and tenders his bill of exceptions."  Defendant reserved bill of
exceptions number 2 to the conduct of counsel, to wit:  "Be it re-
membered, that upon the trial of the above entitled cause the follow-
ing proceedings were had:  Several minutes after bill of exceptions
was prepared and approved, the court stated to counsel for plaintiff
that 'defendant's counsel seemed to claim in his bill that the amount
of the verdict was read in the Rushing case.  The court was not pay-
ing very particular attention.  Was the amount read?'  Plaintiff's
counsel replied, 'Yes, sir; I believe so; does he wish me to leave out
the amount of the verdict?'  To which latter part of plaintiff's coun-
sel's reply defendant objected and excepted.  [Plaintiff's counsel was
then in the act of reading another case not objected to before.]  To
which plaintiff's counsel remarked, 'All right, sir; you can have it, I
reckon; you want a bill of exceptions to that, don't you?'  To which
remark, made in the presence of the jury, defendant excepts and here
tenders his bill of exceptions, and prays the same be approved and
made a part of the record, for the reason that such conduct may have
a tendency to prejudice defendant's cause with the jury."  The de-
fendant reserved bill of exceptions number 3 to the conduct of coun-
sel, as follows:  "Be it remembered, that on the trial of said cause the
following proceedings were had:  Plaintiff's counsel in his closing ar-
gument to the jury, when commenting upon the evidence of the wit-
ness George Partain, made use of the following language:  'This wit-
ness says that Mrs. Wood told him that it was the rocking of the train
which caused her to be hurt.  Now, if this is so, then the railroad is
responsible anyhow, because its track was out of order, and it was
guilty of negligence in that.'  Counsel for defendant called the atten-
tion of the court to this argument, and the court reminded counsel for
plaintiff that it was improper for him to urge before the jury that de-

fendant would be liable for an act of negligence which is not alleged in his petition. Plaintiff's counsel thereupon turned to the jury, and with some degree of vehemence said: 'When the railroad makes such proof we can take advantage of it;' then turned to defendant's counsel and said: 'You will take a bill of exceptions to that, won't you?' To all of which defendant objects and excepts, because the language and manner of plaintiff's counsel is liable to influence the jury against defendant, and here presents his bill of exceptions and prays the same be approved and made a part of the record." Added by the court: "Under the correction of the court counsel for plaintiff said: 'Well, then, I will put it as it is in the petition. The fact is, gentlemen, it is not true; the train was not rocking, but jolting.' He then turned to counsel for defendant and said, 'You except to that, too?' When the latter said, 'Yes.' Counsel for plaintiff then said, 'Well, except then.' Counsel for defendant replied, 'I do;' and here tenders his bill of exceptions, which is approved."

The question arises, was the conduct of the counsel as here detailed calculated to improperly influence the jury in arriving at a verdict? We are of the opinion that it was so calculated. The case of Railway v. Wesch, 85 Texas, 593, was one to recover damages for personal injuries. In his argument to the jury, counsel for plaintiff in his opening address read to the jury, over objections, two opinions where verdicts had been rendered for $10,000 for personal injuries inflicted by railways, and affirmed by the Supreme Court, counsel stating at the time that they were read for the purpose of showing them that large verdicts had been rendered against railroad companies for personal injuries. In delivering the opinion reversing that case, Mr. Gaines, Justice, said: "It was the duty of counsel in his address to the jury to confine himself to the testimony bearing upon the issues of fact presented for their determination. The action of the Supreme Court in affirming a judgment in some case of a like character was a matter as wholly foreign to that discussion as any other fact not in evidence which may have been dragged into the debate. It did not relieve the proceeding of its objectionable tendency to say the opinions were read as a part of the argument. It was the duty of the jury to assess the damages of the plaintiff from the evidence before them, and they should not be influenced by the action of other juries in giving large verdicts. The object of reading the opinions to the jury was doubtless to swell the damages; and it was well calculated to have that effect."

In the case of Receivers v. Withers, 1 Texas Civil Appeals, 540, counsel stated to the jury that he "had drawn the petition under facts, in cases not so bad as this, and had put the amount claimed as low as he thought he could," etc. Mr. Garrett, Chief Justice, said: "He was, in fact, testifying before the jury, and the language called for something more from the court than a mere direction to the jury not to regard it."

· In the case of Railway v. Duelen, 86 Texas, 450, the counsel for plaintiff said to the jury: "And we know * * * that corporations have no souls, and therefore, I say, no consciences; and there is no way to make these big corporations respect the rights of these little defendants except by making them pay for it." Defendant's counsel objected, which was sustained by the court. The remark was repeated by plaintiff's counsel. "The court stopped him, and instructed the jury not to heed the remark; and counsel told the jury he would quit, and let them render a verdict to suit the judge." Mr. Fly, Justice, in discussing this conduct, said: "This conduct upon the part of counsel was very reprehensible and deserves censure, and had it been tolerated by the judge, and had the verdict shown any evidence of passion or prejudice, we would not hesitate to reverse the case on account of it. But it was promptly stopped, the jury were instructed not to heed it, and the verdict shows that they did not heed it —the verdict not being for one-third of what was sued for—and therefore we do not think it calls for a reversal of the case."

In Railway v. Butcher, 83 Texas, 309, the counsel for plaintiff used improper language in his argument to the jury, which "the court did not suppress nor control, nor attempt to do so, and the verdict being for a large sum, held, the remarks of counsel, assented to by the court's silence, were ground for reversal."

From the foregoing decisions we gather, that whenever in the argument of a case counsel departs from the record and uses improper language that is calculated to influence the jury in rendering a verdict larger in amount than they might otherwise do, and the court does not instruct them to disregard the improper language in considering their verdict, and the verdict is such that it indicates that such language did probably affect them in their action in arriving at a verdict, the case will be reversed and remanded for a new trial. That the conduct of counsel in this case was such as was calculated to influence the jury is to our minds evident from the size of the verdict, when considered in connection with the facts. The verdict in the case read was for $5000. Plaintiff sued for $5000 damages; and the verdict in this case is for $5000. These three things concurring, it would seem a little singular if the conduct of counsel did not tend to swell the verdict. Counsel not only read the case, but suggested the similarity of the case read with the one on trial, which was calculated to impress the jury that a $5000 verdict would be proper. The court not only failed to instruct the jury not to consider the remarks of counsel, but increased the probability of the jury's being wrongfully influenced by calling attention to the amount of the verdict in the case read when he asked counsel for appellee if it was true that he had read the verdict, and counsel answered: "Yes, sir; I believe so; does he wish me to leave out the amount of the verdict?" Thus twice calling the attention of the jury to the fact that the Supreme Court had approved a verdict for $5000 in a case claimed by appellee's counsel to be similar

to the one on trial. The reading of a verdict approved by the Supreme Court, in the hearing of a jury, would more probably influence them in their action than anything counsel could say, and properly so, for to it is submitted the final adjudication of all litigated questions involving the rights of the citizens, and its decrees are looked to as a guide in all such matters. It follows, that if a jury is impressed with the idea that the Supreme Court has sanctioned a verdict for a given amount in a case similar to the one they are trying, they would certainly feel it to be their duty and they would be justified in rendering a verdict for a similar amount.

Counsel for appellee in his argument, as shown by bills of exceptions, insisted that the railroad was liable for an act of negligence not alleged in the petition. Under the direction of the court, he said he would put it as in the petition. While these last remarks were not sufficient to reverse the case, inasmuch as the court's action tended to neutralize their effect, yet, when taken in connection with what had preceded them, we think it had a tendency to improperly influence the jury; and when we consider all of his remarks together, we are of the opinion that they were calculated to influence the jury in their verdict. If this be so, then appellant has not had such a fair and impartial trial as the law entitles it to.

The other assignments of error are without merit, and it is not necessary to discuss them.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered June 29, 1894.

Motion for rehearing overruled, September 12, 1894.