(Decided 7th June, 1892.)

---

JESSE HEWES and ANNA E. HEWES, his wife *vs.* THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD COMPANY.

*Carriers of Passengers—Action for Damages—Evidence— Presumption—Burden of Proof—Bills of Exception— Practice in Court of Appeals.*

A passenger on a railroad train was carried by the train beyond her place of destination. In an action for damages brought by her against the railroad company it was HELD:

1st. That the fact that the plaintiff was carried beyond her destination, did not, of itself, establish a presumption that the defendant had failed in the performance of its duty.

2nd. That the burden of proof was upon the plaintiff to establish the allegation in the declaration that the train did not stop long enough at her destination to enable her, by the use of reasonable diligence, to leave the cars in safety.

Hewes and Wife *vs.* Phila., Wilm. & Balto. Railroad Co.

Where a prayer was refused as offered, but granted with an amendment made by the Court, and it does not appear on the face of the bill of exceptions that any exception was taken to the amendment, the question as to the propriety of such amendment will not be considered on appeal.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J., for the appellants. The Court declined to hear the counsel for the appellee.

*James J. Archer*, and *Albert Constable*, (with whom was *William L. Cooley*, on the brief,) for the appellants.

*C. C. Crothers*, and *L. Marshall Haines*, (with whom was *William J. Jones*, on the brief,) for the appellee.

BRYAN, J., delivered the opinion of the Court.

Hewes and wife brought an action against the Philadelphia, Wilmington and Baltimore Railroad Company. The evidence for the plaintiffs tended to show that the female plaintiff was a passenger in the defendant's cars to be carried from Perryville to Havre de Grace; that she took passage on the train, which by the schedule was due at Perryville at 7.50 o'clock P. M. and at Havre de Grace at 7.57 P. M; that the train did not stop at Havre de Grace, and she was carried on to Baltimore, that she was without any money, and had never been in Baltimore, and had neither friends nor acquaintances there; that the night was dark and stormy; that she was carried on to Baltimore; that she was obliged to remain in the depot there until she could return to Havre de

Grace; that she returned in a train that night and did not reach her home in Havre de Grace until after midnight, and that in consequence of fatigue, exposure to the weather, and the fright and annoyance caused by her unprotected condition, she endured great mental and physical suffering, and her health was permanently injured. The evidence for the defendant tended to show that the train did stop at Havre de Grace, and that the conductor stopped the train at Aberdeen and told Mrs. Hewes that a train would come along in a few minutes, which would take her back to Havre de Grace, and that she refused to leave the car and was carried on to Baltimore; that the run from Aberdeen to Havre de Grace occupied from seven to nine minutes. The jury rendered a verdict for the plaintiffs, and assessed the damages at one cent and they appealed.

As we have no control over the verdict, it would be irrelevant to make any comments upon it. Our attention must be confined to the rulings made by the Court upon the prayers submitted by the opposing counsel for the instruction of the jury. Three prayers were offered by the plaintiffs, and one by the defendant. The first prayer of the plaintiffs asked the Court to instruct the jury that if the defendant did not stop its cars at Havre de Grace long enough for the female plaintiff using reasonable diligence to leave the train with safety after she knew, or by the exercise of reasonable care might have known, that it had stopped for the discharge of passengers whose destination was Havre de Grace, and that in consequence she was carried a number of miles beyond Havre de Grace, then she was entitled to recover. The plaintiffs offered a second prayer, and also a third prayer. The bill of exceptions states as follows: "The Court granted plaintiffs' first prayer, but refused to grant their second prayer unless the same was amended, and rejected their third prayer. Plaintiffs then offered the

second prayer again, with the following addition;'' the addition to the prayer is then stated.    The bill of exceptions proceeds as follows: ''The Court then granted plaintiffs' second prayer as amended, and granted defendant's prayer.    To the action of the Court in granting defendant's prayer, and in rejecting their third prayer, the plaintiffs excepted, and prayed the Court to sign and seal this bill of exceptions; which is done accordingly this 20th day of January, 1892.''    We understood the appellants to contend that an exception was taken to the refusal of the Court to grant the second prayer in its original form.    We have quoted what appears in the bill of exceptions on this point, and we find it very expressly and clearly stated that the exception was confined to the rejection of their third prayer, and the granting of defendant's prayer.

The plaintiffs' third prayer maintained that if the female plaintiff was carried beyond Havre de Grace to the City of Baltimore, then the defendant was *prima facie* guilty of negligence.    The defendant's prayer insisted that the jury could not find a verdict for the plaintiffs unless the train did not stop at Havre de Grace, or did not stop long enough for the female plaintiff using reasonable diligence, to leave the car.    These prayers may conveniently be considered together.    When a carrier undertakes to transport goods to a certain point, he is bound to deliver them at the designated place; and if he fails to do so, he is in default.    He has broken his contract, in that he has not done that which he undertook to do.    But there is no such absolute and unconditional duty to discharge passengers at their destination. He must, of course, inform them that the end of their journey has been reached, and he must afford them proper and reasonable means and facilities for departing in safety from the vehicle of transportation.    The traveller is possessed of volition, and he may not choose

to leave the vehicle; or, he may through negligence and inattention disregard the opportunity to leave which has been given to him. It cannot be said that the carrier is bound to eject him, or to insist on his leaving the vehicle against his will. The fact, therefore, that he has been carried beyond his destination, does not of itself establish a presumption that the carrier has failed in the performance of his duty. In the present case, the *gravamen* of the complaint is that the train did not stop long enough to enable the female plaintiff by the use of reasonable diligence to leave the cars in safety. This allegation must be established by proof. When a party has agreed to do a certain act, or to perform a certain work, the law does not assume without proof that he has failed to perform his contract. For instance, if he contracts to build a house, it must be proven that he has not built it, before it can be adjudged that he has broken his contract. If facts are shown which prove a definite and positive obligation on his part, he cannot be relieved from it, except by evidence of performance, or evidence which lawfully excuses and exonerates him from the performance of it. For instance, if it is shown that he had incurred a debt, he must prove payment, or some other matter of satisfaction or discharge. In the present case if it had been the conductor's duty to remove Mrs. Hewes from the train at Havre de Grace, the defendant would be required to prove a lawful excuse for carrying her beyond that station. The appellants' counsel in their argument placed much reliance on a supposed analogy between the duty of the carrier to discharge passengers at their destination, and his duty to provide for their safety while the journey was in progress. But the two conditions are by no means similar. From motives of humanity the law requires carriers of passengers to use the utmost care and diligence in guarding against accidents which may endanger the lives and limbs of the

persons whom they undertake to transport. In the application of this doctrine to railroads, it was said by this Court in *Balto. & Ohio R. R. Co. vs. Worthington,* 21 *Md.,* 283, to include "the most exact care and diligence, not only in the management of the trains and cars, but also in the structure and care of the tracks, and in all the subsidiary arrangements necessary to the safety of the passengers." This is the measure of protection which a railroad company is obliged to extend to passengers. When, therefore, an accident occurs from any cause within these specified limits, the railroad company is *prima facie* guilty of negligence, and must rebut this presumption by showing that there was no failure of duty on its part.

The judgment must be affirmed.

*Judgment affirmed.*

(Decided 7th June, 1892.)