## STATE, Use of CARRIE CHARLES, Widow, *vs.* THE UNITED RAILWAYS AND ELECTRIC CO.

*Fall from Platform of Electric Car—No Evidence of Carrier's Negligence.*

A man boarded an electric railway car just before it started across a long bridge over a river. There were only two passengers in the car but this man stood on the rear platform. The conductor was inside the car near the rear door. The car, going at a rate of speed not excessive, ran into a switch and stopped a little beyond it at the draw of the bridge. When it entered the switch the car received a jolt or oscillation, but not of an unusal kind. After the car stopped the man who had been standing on the rear platform was seen to be lying on the tracks at the switch. He had suffered a fracture of the skull which caused his death. No one of the persons in the car saw him fall. In an action to recover damages for the death so occasioned, *held*, that under these circumstances the fact that the deceased was injured while a passenger does not of itself raise a presumption of negligence on the part of the carrier, and there being no evidence of any defect in the track, or in the car, or in its management, or as to how or why the deceased fell from the car the jury was properly instructed that there was no legally sufficient evidence to entitle the plaintiff to recover.

Appeal from the Court of Common Pleas (Stockbridge, J.)

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*T. C. Ruddell* and *Sidney Hall*, for the appellant.

*Robert Crain* and *Albert E. Donaldson* (with whom was *Omer F. Hershey* on the brief), for the appellee.

Schmucker, J., delivered the opinion of the Court.

The equitable appellant sued the appellee in the Court of Common Pleas of Baltimore City for damages for the death of her husband who was fatally injured by falling from one of the appellee's electric cars. At the trial of the case below the Court granted the defendant's prayer, offered at the close

of the plaintiff's evidence, directing the jury to find for the defendant, for want of legally sufficient evidence to entitle the plaintiff to recover. A verdict and judgment were entered for the defendant and the plaintiff appealed.

There is but one bill of exceptions in the record and that brings up for our review the Court's action in granting the prayer.

The material facts testified to by the plaintiff's witnesses are as follows: The appellee maintains and operates a single railway track, with occasional turnout switches, on the long bridge extending from the foot of Light street in Baltimore City to Brooklyn in Anne Arundel County. Shortly before noon on February 15th, 1903, Edward C. Charles, the husband of the equitable plaintiff, boarded one of the defendants north-bound cars at the south end of the bridge and paid his fare. He did not enter the car, although there were only two passengers in it, but remained standing on the rear platform. The two passengers, of whom one, named Irwin, was a discharged employee of the defendant and the other was a colored man named Hicks, were the only persons who testified to what occurred at the time of the injury to Charles. A motorman named Lambreth, not the one driving the car, also rode in it for a short distance.

According to their testimony, a few moments after Charles got upon the rear platform of the car it ran into and through one of the switches. Irwin, one of the passengers, who was inside the car testified that when it entered the switch it was going at a good rate of speed, that he was walking back through the car at the time and just before he got to the door of the car "it plunged right into the switch and went clean into the switch and two car lengths on the other side of it, and as it did it threw me on the other side where Mr. Lambreth was sitting." Hicks, the other passenger, who was seated about the middle of the car when it entered the switch, testified that he did not know how fast the car was going at the time but its motion in entering the switch "kind of threw him a little off the seat." He also testified that the car after passing through

the switch ran about two car lengths until it came to the draw when it stopped. Irwin's testimony on that subject was to the same effect.

When the car stopped Charles was for the first time seen, by both witnesses, lying unconscious on the floor of the bridge across the straight track and the switch near the entrance to the latter. There is no evidence that he ever regained consciousness and it is admitted that he died from a fracture of his skull received at the time of the accident to him on the bridge. Both witnesses saw Charles standing in apparent good health on the rear platform of the car just before it entered the switch, but neither one saw him again until the car stopped after he had been injured, nor was there any evidence at all produced as to the manner or circumstances of the happening of the injury to him. The motorman of the car as it entered and passed through the switch was at his place on its front platform and the conductor was standing inside of the car near its rear door, which was open, exhibiting a paper to a motorman who rode a short distance on the car. The witness Irwin further testified that he had lived near the bridge all his life and that "there was no occasion for that car to go into that switch."

The evidence shows that a fatal accident occurred to the husband of the equitable plaintiff after he had become a passenger upon the defendant's car. The sole question in the case is whether there was any legally sufficient evidence tending to show a causal connection between any negligent act of the defendant and the happening of the injury. There is certainly no direct evidence of that character. Although one of the witnesses thought the car was going at a good rate of speed there is no evidence that it was going at an excessive or improper speed. There was nothing in itself unlawful or negligent in running through the switch instead of continuing on the main track. The statement of the witness Irwin that the car had no occasion to go into the switch was merely an expression of his opinion on that subject. The motorman was at his place and the conductor was standing by the open rear

door of the car which was then passing over the bridge where it was not expected that passengers would desire to enter or leave it.    The degree of lateral motion of the car on entering the switch testified to by the witnesses was not unusual.    It is a matter of common knowledge of which the Courts will take cognizance that street cars do not run with entire smoothness but are subject to occasional jars and undulations. as they enter or leave switches or cross intersecting tracks or encounter obstacles or slight inequalities in the track.    *Yorktown Turnpike Road* v. *Cason*, 72 Md. 377.    Furthermore there is no evidence that the motion of the car threw Charles off of the platform or caused the injury which proved fatal to him.    No one saw him fall and although direct proof of the defendant's negligence is not necessary, the mere fact that he was injured does not of itself justify the inference that the injury was caused by such negligence.    There is no suggestion in the evidence of any defect in the car or the track and the motorman was at his place in front of the car.    The deceased may have attempted to alight from the car while it was in motion or may have become suddenly ill and fallen off from that cause.    In the absence of some further evidence than appears in this record the jury could have arrived at a conclusion as to the cause of his death only by conjecture or speculation.

The mere fact that Charles was injured while a passenger on the defendant's car does not of itself raise a presumption of negligence in the absence of surrounding circumstances from which a legitimate inference of negligence can be drawn. *Benedick* v. *Potts*, 88 Md. 55–6; *Western Maryland R. R. Co.* v. *Shirk*, 95 Md. 652.    In *Benedick* v. *Potts*, this Court speaking through the present Chief Justice, said:    "There are instances in which the circumstances surrounding an occurrence and giving a character to it are held if unexplained to indicate the antecedent or coincident existence of negligence as the efficient cause of an injury complained of.    These are the instances where the doctrine of *res ipsa loquitur* are applied. This phrase which literally translated means that 'the thing

speaks for itself' is merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as the cause of that accident; and the doctrine which it embodies though correct enough in itself may be said to be applicable to two classes of cases only, viz., first, 'when the relation of carrier and passenger exists and the accident arises from some abnormal condition in the department of actual transportation; second, where the injury arises from some condition or event that is in its very nature so obviously destructive of the safety of person or property and is so tortious in its quality as in the first instance at least, to permit no inference save that of negligence on the part of the person in control of the injurious agency.' *Thompson on Neg.*, 547. But it is obvious that in both instances more than the mere isolated single, segregated fact that an injury has happened must be known. The injury without more does not necessarily speak or indicate the cause of that injury—it is colorless, but the act that produced the injury being made apparent may, in the instances indicated furnish a ground for a presumption that negligence set that act in motion. The maxim does not go to the extent of implying that you may from the mere fact of an injury infer what physical fact produced the injury; but it means that when the physical act has been shown or is apparent and is not explained by the defendant, the conclusion that negligence superinduced it may be drawn as a legitimate deduction of fact."

In the case at bar the evidence goes no further than to show that an injury was inflicted on the husband of the equitable appellant without showing how it occurred or that any act of the appellee caused it. To have permitted the jury under such circumstances to infer that negligence on the part of the defendant produced the injury would have been to disregard the law as plainly laid down in the cases last cited.

In our opinion the Court below committed no error in taking the case from the jury and we will affirm its action in that respect.

*Judgment affirmed with costs.*

(Decided March 22nd, 1905.)