## CECELIA A. GRINATH *vs.* BALTIMORE AND BEL AIR ELECTRIC RAILWAY COMPANY.

*Carriers—Injury to Passenger—Presumption as to Negligence—Sudden Jerk of Car.*

If the sudden starting of a railway car, resulting in an injury to a passenger, is so violent as to indicate a want of care in the management of the car or a defect in its equipment, the burden of proof is upon the carrier as to whether the duty to provide for the passenger's safety was properly performed.

p. 293

A carrier's duty to a passenger is to exercise for his or her safety the highest care consistent with the nature of its undertaking, and this includes the most exact care and diligence in the management of railroad trains and cars, in the structure

and care of its tracks, and in all the subsidiary arrangements necessary to the safety of passengers, and when an accident occurs within these specified limits, the railroad company is *prima facie* guilty of negligence.                     p. 294

In an action on account of injury caused by plaintiff's fall, while entering and proceeding to a seat in defendant's car, as a result of a sudden jerk of the car, upon the motorman's effort to start it, which, according to the latter's testimony, was due to the fact that the motor machinery was not "working properly," the direction of a verdict for defendant was error.  p. 295

*Decided February 29th, 1924.*

Appeal from the Circuit Court for Harford County (HAR-LAN, J.).

Action by Cecelia A. Grinath against the Baltimore and Bel Air Electric Railway Company. From a judgment for defendant, plaintiff appeals. Reversed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*John L. G. Lee,* with whom was *Jacob M. Moses* on the brief, for the appellant.

*Thomas H. Robinson,* for the appellee.

URNER, J., delivered the opinion of the Court.

After boarding an electric car of the defendant at the terminus of its line at Carney, in Baltimore County, and having paid her fare as she entered, the plaintiff was proceeding to a seat, when the car started suddenly and she was thrown to the floor and injured. The testimony refers to the car as a small one with only four wheels. There is a long seat on each side facing the aisle. The car is operated by one man who acts as motorman and conductor. The fares are placed in a receptable by the passengers as they enter the car.

The accident was thus described by the plaintiff in her testimony: "I was just about to take my seat in that car—that is the place where I fell. I just left the conductor and had gone into the car when he started the car with a sudden jerk, so sudden that the windows shook; and I grabbed for myself, but I was twisted around and fell over on my back, and the car kept on moving. The people in the car hollered to the conductor and then he seen me lying there." "As I went in on the front of the car, the car started with a terrible jerk. A small person might have caught themselves. I couldn't hold myself, and I turned around and fell down on my back. I was laying there a second or so when the conductor turned around, saw me lying on the floor of the car and he laughed at me. I felt sick and I got Mrs. Grasmick to help me to a seat there in the car, and then we went on our journey." The conductor "started the car and never looked around to see if everything was all right; he just went right ahead. He just seen that I put the fare in the box and then he started the car." There were hand-straps in the car, in reference to which the plaintiff testified: "I tried to get hold of them, but the jerk of the car threw me down."

Mrs. Grasmick, who was accompanying the plaintiff, Mrs. Grinath, on the trip, and who preceded her as they entered the car, testified that Mrs. Grinath "put the fares in the box" and "was coming right after" the witness, when there was a "sudden jerk of the car," and the witness grabbed hold of the back of the seat," and "caught herself and sat down," but Mrs. Grinath "was not within reach of anything and she fell down on her back." Mrs. Grinath said that she did not fall against Mrs. Grasmick but " was whirled away from her and fell on the floor." The plaintiff is a large and heavy woman and it is proved that she was seriously injured by her fall.

There were two other passengers in the car, and we infer from the testimony that they were seated when the car started.

The motorman, according to evidence in the record, accounted for the sudden movement of the car at the time of

the accident as being due to the fact that it was not "working properly," and that when he turned on the power "she didn't seem to pick up right," and when he applied the power again "she started with a quicker grab than he expected."

At the close of the testimony for the plaintiff a verdict was directed for the defendant at its request, and the only question to be determined is whether that ruling was correct.

A presumption of negligence on the part of the defendant would not arise from the mere fact of the plaintiff's fall as the result of the sudden start of the car unless the movement was unusually abrupt. Irregular motions are unavoidable and to be anticipated in the ordinary course of railway transportation. *Dawson* v. *Md. Elec. Ry.*, 119 Md. 376; *Charles* v. *United Rys. Co.*, 101 Md. 186; *Yorktown Turnpike Rd.* v. *Cason*, 72 Md. 381. But if the sudden starting of a railway car, resulting in an injury to a passenger, is so violent as to indicate a want of care in the management of the car or a defect in its equipment, the burden of proof should rest upon the carrier in regard to the question as to whether the duty to provide for the passenger's safety was properly performed.

In 10 *C. J.* 947, it is said, in reference to the operation of street cars: "As a general rule it is sufficient, as regards a boarding passenger, that the car is held stationary until he has reached a place of safety on the car, and hence, although a contrary rule has been stated, it is generally held that it is not necessary to hold a car until a passenger is seated, and that the carrier is not liable for injuries sustained by a passenger while in the act of taking a seat, in consequence of the starting of the car, unless it is started in a violent, unusual or reckless manner, or unless the unusual condition and circumstances surrounding a particular passenger, as in case of an enfeebled or infirm passenger, require that the car be held until he is seated."

It is said in 5 *R. C. L.* 80: "With regard to the effect of sudden starts or stops, jerks or jolts of the carrier's vehicle as raising the presumption of negligence when a passenger

is injured thereby, while it would seem that no such presumption arises where such stopping, starting and jolting are only such as are incident to the operation of a carrier's vehicle, and the burden is on the plaintiff to prove the carrier's negligence, yet there are numerous decisions to the effect that a presumption of negligence on the part of the carrier arises from such occurrences where the start or stop is unusually sudden or when the jerk or jolt is of unusual severity. * * *" Upon the same subject it is said in 4 *R. C. L.* 1210: "The unusual jerking, jolting or lurching of a carrier's vehicle has in many instances been held to be evidence of negligence rendering it liable to a passenger injured thereby without negligence on his part contributing to his injury." The question of liability where passengers are injured by the sudden starting of cars in which they are being conveyed is the subject of a valuable note to *Ottinger* v. *Detroit United Ry.* (166 Mich. 106) in 34 L. R. A. (N. S.) 225.

The duty of the defendant to the plaintiff as its passenger was to exercise for her safety the highest care consistent with the nature of its undertaking. *B. & O. R. R. Co.* v. *State, use of Hauer,* 60 Md. 462; *United Rys. Co.* v. *Weir,* 102 Md. 289. In the opinion delivered in *Hewes* v. *P., W. & B. R. R. Co.,* 76 Md. 158, it was said: "From motives of humanity the law requires carriers of passengers to use the utmost care and diligence in guarding against accidents which may endanger the lives and limbs of the persons whom they undertake to transport. In the application of this doctrine to railroads, it was said by this Court in *R. R. Co.* v. *Worthington,* 21 Md. 283, to include 'the most exact care and diligence, not only in the management of the trains and cars, but also in the structure and care of the tracks, and in all the subsidiary arrangements necessary to the safety of the passengers.' * * * When, therefore, an accident occurs from any cause within these specified limits, the railroad company is *prima facie* guilty of negligence, and must rebut this presumption by showing that there was no failure of duty on its part."

In *Balto. & Pot. R. Co.* v. *Swann,* 81 Md. 408, it was said that if the passenger was injured in the defendant's cars "in consequence of some fault or defect in the vehicle of transportation," the defendant was clearly liable for the injury, unless it could show that it exercised the utmost care and diligence.

In this case we are unable to hold that the sudden movement which caused the plaintiff's fall and injury was only such an occurrence as might be expected in the ordinary course of normal operation. It could be rationally inferred from the evidence that the motion was abnormal and was due to a defective condition of the operating mechanism. A judicial declaration to the contrary is not warranted by the facts which the evidence in the case tends to prove. From the testimony in behalf of the plaintiff it appears that while moving in the usual way toward a seat on the car she was thrown to the floor and injured by an extraordinary and violent motion resulting from the effort of the motorman to start the car when the motor machinery was not "working properly." There is consequently evidence that the injury to the plaintiff as a passenger was caused by faulty mechanical action producing a sudden movement of the car which might be reasonably considered by the jury to have been abnormal and hazardous. In our opinion the evidence entitled the plaintiff to have the issue in the case submitted to the jury.

*Judgment reversed with costs, and new trial
awarded.*