EISENHOWER *v.* BALTIMORE TRANSIT CO.

[No. 172, October Term, 1947.]

*Decided May 26, 1948.*

530

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and HENDERSON, JJ., and BAILEY, Circuit Judge, specially assigned.

*Bernard M. Goldstein* for the appellant.
*Benjamin C. Howard,* with whom was *Philip S. Ball* on the brief, for the appellee.

BAILEY, Circuit Judge, by special assignment, delivered the opinion of the Court.

This suit was instituted by Alberta Eisenhower against Sun Cab Company, Inc. and The Baltimore Transit Company to recover for personal injuries which she sustained when a taxicab, owned by Sun Cab Company, Inc. and driven by one Metcalf, in which she was riding as a passenger for hire, was struck by a street car of The Baltimore Transit Company, operated by one Keller. The jury in the Superior Court of Baltimore City rendered a verdict in her favor against both defendants in the amount of $5000.00. Sun Cab Company, Inc. filed a motion for a new trial which was granted. The motion of Baltimore Transit Company was for a judgment n.o.v., or in the alternative, for a new trial. Acting under the authority given by Rule 8, Part III, subd. 3, Trials, of the General Rules of Practice and Procedure,

1945, the Court directed the entry of a judgment n.o.v. for costs in favor of the defendant, The Baltimore Transit Company, without ruling upon its motion for a new trial. The plaintiff has appealed from this judgment.

The accident occurred about one o'clock in the afternoon of July 5, 1946, at a five street intersection in Baltimore. The streets here intersecting are Eutaw Street, Madison Street, Hamilton Terrace, Madison Avenue and St. Mary's Street. Eutaw Street runs north and south and in the block immediately north of the intersection it is called Hamilton Terrace. Madison Street runs east and west and its western terminus is at the intersection. Madison Avenue begins at the intersection and runs therefrom in a northwesterly direction. St. Mary's Street is a narrow street which runs into the intersection from the southwest and ends there. There are double street car tracks on Eutaw Street and Madison Avenue, curving from one street into the other. There is one traffic signal at the location which controls the movement of traffic on all five of the streets entering the intersection. It is on a pylon in the bed of Eutaw Street about 14 feet east of the east rail of the northbound car track and about 60 feet north of the south curb line of Madison Street. The north curb line of Madison Street does not extend in a straight line to Eutaw Street, but turns to the northwest about 70 feet from Eutaw Street and is then, in effect, a prolongation of the northeast curb line of Madison Avenue. The width of Madison Street, between curbs, is 40.3 feet, so that the pylon stands about 20 feet north of a westerly prolongation of the north curb of Madison Street. There are two supplementary traffic lights, one at the corner of St. Mary's and Eutaw Streets, and the other at the corner of St. Mary's Street and Madison Avenue, but the manner of their operation is not material in the instant case.

It is stipulated in the record that when the light on the pylon showed green for southbound traffic on Hamilton Terrace it showed red for all other traffic; that

when it showed green for northbound traffic on Eutaw Street, it showed red for southbound traffic on Hamilton Terrace; that the amber light showed only at the end of the green light; that the light changed from red to green without the intervening amber; and that the amber light showed for the final three seconds of the green light and that for said final three seconds both the amber and green light showed together. It is further stipulated that the weather was clear and the streets were dry. The taxicab was southbound on Hamilton Terrace and the street car was northbound on Eutaw Street.

The Court, in deciding whether to grant demurrer prayers or motions for judgments n.o.v. resolves all conflicts in the evidence of the plaintiff and assumes the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiff's right of recovery. *Armiger v. Baltimore Transit Co.*, 173 Md. 416, 196 A. 111; *Baltimore Transit Co. v. Worth*, 188 Md. 119, 52 A. 2d 249; *Beck v. Baltimore Transit Co.*, 190 Md. 506, 58 A. 2d 909. The evidence in this case must, therefore, be considered in the light most favorable to the plaintiff. But it is also true that in an action to recover damages for injuries caused by the alleged negligence of the defendant, it is incumbent upon the plaintiff to prove that there was a neglect of duty by the defendant and that the injury sustained was the direct consequence of such neglect of duty. Where it is manifest to the court upon the plaintiff's own showing and the uncontradicted evidence in the case that there is no rational ground upon which a verdict can be based for the plaintiff, it becomes the duty of the court to direct a verdict for the defendant, or, as in this case, grant a motion for a judgment n.o.v. in favor of the defendant. *State, to use of Bacon v. Baltimore & Potomac R. Co.*, 58 Md. 482; *Baltimore & Ohio R. Co. v. State, to use of Schroeder*, 69 Md. 551, 16 A. 212; *Baltimore Transit Co. v Young*, 189 Md. 428, 56 A. 2d 140.

In the instant case there is no question of the contributory negligence of the plaintiff. The question is as to the primary negligence of the defendant, The Baltimore Transit Company. This is not a case where the mere happening of the accident raises any presumption of negligence on the part of the defendant, but the burden is upon the plaintiff to show negligence. Speculation as to how or from what cause the accident occurred cannot be allowed to stand for proof. There must be evidence upon which the jury can reasonably and properly conclude that the injury was produced by some negligence or wrongful act of the defendant. *Barker v. Whittier,* 166 Md. 33, 170 A. 578; *Baltimore & P. R. Co. v. State, Use of Abbott,* 75 Md. 152, 23 A. 10, 32 Am. St. Rep. 372.

The acts of negligence charged against this defendant are that its agent disregarded and went through a red light at said intersection, operated the street car at a high and improper rate of speed, failed to keep a proper lookout and failed to have the street car under proper control. All the evidence relating to the happening of the accident was produced by the plaintiff. In addition to her own testimony, there was offered the testimony of Keller, the operator of the street car; and of Metcalf, the driver of the taxicab. The evidence of the motorman, Keller, which was undisputed, was to the effect that he was operating the street car at a proper rate of speed, between 10 and 15 miles per hour, that he was keeping a proper lookout and "had noticed the cab sitting over on Hamilton Terrace", and that he had the street car under proper control. Therefore, if there was any act of negligence imputable to this defendant, it must have been that the motorman entered the intersection on a red light.

The motor vehicle laws of the State are now codified as Article 66½ of the Annotated Code, 1947 Cumulative Supplement. Section 141 of said Article deals with traffic control signals and provides under subsection (a) when the signal is green alone or "Go", "(1) Vehicles facing

the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. All vehicles shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection at the time such signal is exhibited." It is further provided by subsection (e) of Section 141 that "the operator of any street car or trackless trolley shall obey the above signals as applicable to vehicles." In discussing the said provisions in the case of *Caryl v. Baltimore Transit Co.*, 190 Md. 162, 168, 58 A. 2d 239, 242, the Court states that the last sentence in sub-section (a) (1), quoted above, announces no new principle of law, but that "It has always been the law that a pedestrian or a vehicle starting across an intersection with a favorable signal has the right to complete the trip, even if the light changes in the middle of the passage. *United States Fidelity & Guaranty Co. v. Continental Baking Co.*, 172 Md. 24, at page 29, 190 A. 768." If Keller, the motorman, entered the intersection on a green light, he had the right to continue through the intersection and proceed in a northwesterly direction on Madison Avenue, with the right-of-way over Metcalf, the driver of the taxicab, entering the intersection from Hamilton Terrace, even though Metcalf entered on a green light. The proper decision of the question of primary negligence on the part of this defendant depends, therefore, upon whether there was any evidence in this case legally sufficient to prove that Keller, the motorman, entered the intersection on a red light. If there was not, the court was correct in granting the motion for judgment n.o.v. *State, Use of Foy v. Philadelphia, W. & B. R. R. Co.*, 47 Md. 76. However, this Court has held repeatedly that a case will not be withdrawn from the jury for the want of legally sufficient evidence if there is any evidence, however, slight, legally sufficient as tending to prove negligence, competent, pertinent and coming from a legal source, but that the weight and value of such evidence will be left to the jury. *State v. Carroll-Howard Supply Co.*, 183 Md. 293, 37 A 2d 330; *Cogswell v.*

*Frazier*, 183 Md. 654, 39 A. 2d 815; *Taxicab Co. v. Hamburger*, 146 Md. 122, 125 A. 914; *Taxicab Co. v. Emanuel*, 125 Md. 246, 93 A. 807; *Geiselman v. Schmidt*, 106 Md. 580, 68 A. 202; *Sun Cab Co. v. Reustle*, 172 Md. 494, 192 A. 292.

Let us now examine the evidence in the light of these authorities. The plaintiff's testimony on direct examination was as follows: "As we were going down I was looking from one side to the other. I was looking straight ahead, and at the time I did look at the light it was green, and at that time we were just about a car and a half, or a little more, past the curb, and then the next thing I know I saw the street car and the cab driver tried to pull on his brakes to stop, and he had stopped and they both had come together." On cross examination she stated that the taxicab stopped on Hamilton Terrace at its intersection with Madison Avenue; that it then proceeded into the intersection and that when it was about a car and a half beyond the curb line, she first noticed the green light; that the first time she saw the street car was "right before it came into us"; and that she did not know when the light turned green or where the street car was at that time.

The testimony of the motorman, Keller, was as follows: "As I arrived at the intersection the light was green. Nobody got on or got off the car, so I proceeded across, slowing up for the curve. I had noticed the cab sitting over on Hamilton Terrace. As I got ten or twelve feet from the cab, the cab proceeded to move. I threw my car into emergency and did everything in my power to stop it." He further testified that he looked at the light, that the light was green when he started into the intersection and that it was still green the last time he saw it, which was when he was just a few feet from the pylon. He stated on redirect examination that when he saw the cab standing on Hamilton Terrace he had already passed the pylon.

There is nothing in the plaintiff's own testimony or in the testimony of Keller from which the inference

can be drawn that the street car entered the intersection on a red light. On the contrary, if this were the only evidence in the case, the only logical inference would be that the street car was proceeding lawfully into and through the intersection. But we must still consider the testimony of Metcalf, the driver of the taxicab, also called as a witness by the plaintiff.

We will quote at length from Metcalf's testimony. On direct examination he gave the following testimony: "I was headed south on Hamilton Terrace. As I approached the light at Eutaw and Madison, the light turned red, so I stopped. I stopped at the building line, and of course, I was watching for the light to change green.

"Q. Now, how far is that building line from the street car tracks? A. I would say around 25 feet.

"Q. Go ahead. A. Before the light had changed I noticed a street car pull up to the corner, whether it discharged or took on passengers, I can't say, and then the next point the light turned green. Of course, I started out. The next I seen the street car was about even with the traffic light, so I applied my brakes and stopped. Of course, the right front of his car hit the right front fender and bumper of my car.

"Q. Now, when you started your taxicab after the red light, are you sure that the light was green in your favor? A. Positive."

Under cross-examination by defendant's counsel this witness gave the following testimony:

"Q. Now, where was the street car when you first saw it? A. When I first saw the street car it was at the other intersection taking on or leaving off passengers, I wouldn't say which. I don't know.

"Q. Was that while you were stopped? A. Yes sir.

"Q. Now, where was the street car when you started? A. When I started and the light was green the street car was about even with the light.

"Q. Was the street car moving then? A. Yes, sir.

"Q. Well now, Mr. Metcalf, if you saw the street car at the light and moving towards you, why did you start?

A. I had started. The light was green. I had started immediately when I seen the street car stopped.

"Q. Now, where was the street car when you started? A. I would say about with the light."

During further questioning by defendant's counsel the witness variously testified that the street car was back at the corner to take on or leave off passengers when he started his taxicab; that when he applied the brakes to the taxicab, the street car was at the light; and that the first time he saw the street car moving towards him it was at the light.

During his cross-examination by counsel for Sun Cab Company, Inc., he gave the following testimony:

"Q. When the traffic light that you have indicated as being in the bed of Madison Street turned green, was it then that you started your taxicab? A. Yes, sir.

"Q. Now then or at the time that you first started your taxicab, that is right at the time or just before, did you see the street car? A. Yes, sir.

"Q. Where was the street car then? A. Just about with the light.

"Q. Do you mean— A. The front of the street car was about with the light."

We have quoted the testimony of this witness at such length so that we might properly evaluate its probative force. The various statements of the witness as to the position of the street car at the time the light turned green in the witness' favor are clearly contradictory. It was said in the case of *Slacum v. Jolley*, 153 Md. 343, at page 351, 138 A. 244, at page 248, that "when a witness says in one breath that a thing is so, and in the next breath that it is not so, his testimony is too inconclusive, contradictory, and uncertain to be the basis of a legal conclusion." This rule was applied in the cases of *Oberfeld v. Eilers*, 171 Md. 332, 189 A. 203, and *Askin v. Long*, 176 Md. 545, 6 A. 2d 246. In applying the rule in the case of *United States Fidelity & Guaranty Co. v. Continental Baking Co.*, 172 Md. 24, at page 33, 190 A. 768, at page 772, the Court says: "The first answer that the light was changing to amber as he entered

the intersection is cancelled by his answer that it changed back at the safety zone, 40 to 70 feet away. Such testimony has no probative force or evidential value." The last application of the rule by this Court was in the case of *Butler v. Reed-Avery Co.*, 186 Md. 686, 48 A. 2d 436, where many of the cases are reviewed. Tested in the light of these authorities, it is our conclusion that the testimony of the witness, Metcalf, is too vague, indefinite and speculative to constitute a basis from which the jury could arrive at a rational conclusion. As the other evidence in the case failed to show any negligence on the part of the operator of defendant's street car, we think the case should have been withdrawn from the consideration of the jury, in so far as this defendant was concerned. This being true, the court was correct in granting the motion for judgment n.o.v. as to this defendant.

There is one other question for our consideration. During the direct examination of Keller, plaintiff's counsel attempted to ask him about his conviction in the traffic court for some violation of the traffic law growing out of this accident. Upon objection the Court refused to allow the question to be answered. The sole object of this question was to discredit the plaintiff's own witness. It is a general rule of law, founded on reason and good sense, and to effect the ends of justice, that a party cannot discredit his own witness or show his incompetency. *Franklin Bank v. Steam Nav. Co.*, 11 Gill & J. 28, 33 Am. Dec. 687. There is another general rule that the judgment in a criminal prosecution is not competent evidence, to establish the truth of the facts upon which it has been rendered, in a civil action for damages occasioned by the offense of which the party stands convicted. *General Exchange Insurance Corp. v. Sherby,* 165 Md. 1, 165 A. 809. For either of these reasons the Court was correct in refusing to allow the testimony to be admitted.

Finding no error in the rulings of the trial court, the judgment will be affirmed.

*Judgment affirmed, with costs.*