KAUFMAN *v.* BALTIMORE TRANSIT COMPANY

[No. 75, October Term, 1950.]

*Decided February 7, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, HENDERSON and MARKELL, JJ.

*L. Wethered Barroll,* with whom were *Lewin Wethered* and *H. Harry Rosenberg* on the brief, for the appellant.

*J. Nicholas Shriver, Jr.,* and *Hamilton O'Dunne* for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a judgment on a verdict directed for defendant at the close of plaintiff's evidence in a negligence case. Plaintiff, a passenger on defendant's street car, was injured by the fall of another passenger, a Mrs. Vandeveer, into plaintiff's lap about six o'clock on Saturday afternoon, December 4, 1948. The verdict was directed on the ground that there was no evidence legally sufficient to show that plaintiff's injuries, or the fall of the other passenger, was caused by negligence of defendant.

Plaintiff, then nineteen, lived and still lives with her mother in Baltimore, and was a student at Johns Hopkins University, where she graduated with honors, receiving a B.S. degree, on June 14, 1949. She was married about three weeks after December 4, 1948, as had been planned. Since May, 1949 she has been employed at Edgewood.

Plaintiff was seated, with her mother beside her, on the rear, curved seat on defendant's North Avenue trolley car. The car was crowded, there were people standing. Somewhere between Pulaski Street and the Western Maryland underpass "all of a sudden the street [car] gave a terrific jolt and Mrs. Vandeveer [fell] on me. I had my arm * * * across my lap, and this lady fell into my lap on my arm, and then, of course, she got up and apologized. I started to cry because I was in pain, and my mother tried to console me, and she went up and spoke to the street car conductor, and I continued on until I got to Alto Road, which is where we always get off, and got off and walked home, which is about a block". At the time the car gave this jolt, "it is hard to say what it was doing", (whether it was in motion). "I don't know because I wasn't paying any attention; all I know it gave this terrific jolt and she was thrown right on to me." Asked to describe the jolt, she said, "it gave a very terrible—a very severe jerk or jolt to the street car which was severe enough to throw the woman off her feet." As a result of this jolt, "she fell into my lap".

Saturday evening plaintiff telephoned her family physician and Monday evening, December 6th, went to see him. Her "arm was very sore, and it just felt sort of strained where she had fallen on this part of it; I felt it all the way up, even through the back of my shoulder and the back of my neck". Her physician continued to treat her for this neck condition, directed her to use heat on it, suggested physiotherapy treatments, which did not seem to help, then X-rays and about the beginning of April sent her to Dr. Weinberg, who testified that he feels the condition of pain in the cervical region of the spine is permanent, and that her symptoms follow or can follow such an injury as she had. She wears a collar prescribed by Dr. Weinberg, but at first wore a higher collar and "had to wear it more than I do now".

Plaintiff's mother testified, "the car gave an unusually hard jerk, and this lady who had been standing by the last side seat, it threw her; she fell several steps towards the back and landed on top of [plaintiff]". "I would say it was an unusually hard jerk—enough to throw a woman of Mrs. Vandeveer's size off her feet".

Mrs. Vandeveer testified that the car was crowded; she was standing about four feet from plaintiff. "I was standing in the rear of the car holding on to the last seat on the left of the car. Of course, there was a circular seat in the back, * * *. As well as I can remenber it started off after it had stopped to let a passenger off, and it gave a jerk and I lost my hold and fell toward the back." She fell against plaintiff, she could not prevent falling the way she did. "* * * as I have already said, the car started off after it had stopped to let a passenger off, and gave a jolt, and then I fell back towards the lady". As far as she knows, she is in perfect health; there was nothing the matter with her to cause her to fall. Asked to "describe a little more in detail what sort of a jolt it was", she said, "Just like it always does when it starts off". On cross-examination, when asked whether or not some people got up from the rear seat and she let go of the seat when they got up, before

the car started let go of her hold, she said, "Somebody did pass. I had to let go. I let somebody pass, as well as I remember. Q. You were not holding then when the car started off? A. I don't think I was."

In passing upon the legal sufficiency of the evidence we must, of course, assume the truth of the evidence, and all permissible inferences, most favorable to plaintiff. If the testimony of one witness at the trial is legally sufficient, it matters not that this testimony may be contradicted by ten witnesses for defendant, or even that it may be in conflict with statements before the trial, or testimony in a previous trial or other legal proceeding, of the same witness. *Baltimore Transit Co. v. State, for use of Castranda*, 194 Md. 421, 71 A. 2d 442, 446-447; *Foble v. Knefely*, 176 Md. 474, 484-485, 6 A. 2d 48, 122 A. L. R. 831, and cases cited. But if any witness's testimony is itself so contradictory that it has no probative force, a jury cannot be invited to speculate about it or to select one or another contradictory statement as the basis of a verdict. *Eisenhower v. Baltimore Transit Co.*, 190 Md. 528, 537-538, 59 A. 2d 313, and cases cited. Testimony at the trial which is later corrected by the witness cannot go to the jury as against the later correction.

In *Baltimore & Yorktown Turnpike Road v. Cason*, 72 Md. 377, 381, 20 A. 113, 114, in reversing a judgment for a plaintiff who claimed to have been thrown from the platform of a horse car in January, 1884, by the motion of the car, this court by Judge McSherry said, "Now, it is notorious that just such motions as the appellee described, are of frequent and common occurence in the running of street-cars. 'Judges cannot denude themselves of the knowledge of the incidents of railway traveling, which is common to us all.' *Siner v. R. R. Co.*, L. R. 4 Exch. 123; *R. R. Co. v. Slattery*, L. R. 3 App. [Cas.] 1155." In *Przyborowski v. Baltimore Transit Co.*, 191 Md. 63, 66, 59 A. 2d 687, 688, in 1948, we reviewed *Brocato v. United Rys. & Electric Co.*, 129 Md. 572, 99 A. 792 and earlier and later cases and quoted the

statement, in that and earlier cases, that "electric cars do not run perfectly smoothly and there are certain movements to which they are subject, and which do not justify the inference of negligence or carelessness on the part of those in charge." Cf. *Charles v. United Rys. & E. Co.*, 101 Md. 183, 186, 60 A. 249. The construction and the operation of street cars have undergone revolutionary changes since 1884. Better built cars and roadbeds are subject to greater power and speed. The statements quoted are, on changed facts, no less true.

Ordinarily the only direct evidence of the cause of a jolt or movement, and of negligence *vel non,* would be testimony of the operator of the car. But plaintiffs are not required to prove their cases out of the lips of their adversaries, and only occasionally are able to do so. *Grinath v. Baltimore & Bel Air Electric R. R. Co.*, 145 Md. 290, 292-293, 295, 125 A. 604. In the absence of such evidence, the results of the movement, upon the passenger in question or other passengers or both, may show the movement to have been so unusually violent or sudden as to justify an inference of negligence. When a seated passenger is injured by being hurled from his seat against the seat in front of him, it may be inferred that a sudden stop was due to negligence of the operator, in the absence of other circumstances, not including such negligence, which necessitated the stop. *Charlton Bros. Transp. Co. v. Garrettson*, 188 Md. 85, 51 A. 2d 642. Such an inference must be drawn from facts, not from adjectives or other words used by witnesses to characterize the movement, *e. g.,* in the instant case, "terrific jolt", "very terrible—very severe jerk or jolt", "unusually hard jerk". Cf. *Herholtz v. West Penn. Rys. Co.*, 362 Pa. 501, 66 A. 2d 839. Mrs. Vandeveer, the only person in the crowded car who is shown to have been directly affected by the jolt, describes it as "just like it always does when it starts off". If it were feasible to distinguish degrees of violence with which one person is set in the lap of another (which depends largely upon the agility or lack of agility of the one set) there is

nothing to indicate that Mrs. Vandeveer was set unusually hard in plaintiff's lap. Even the serious, obscure spinal injury of which plaintiff complains gave no immediate visible sign and seems to have been due not to the force of the contact but to the cramped position of plaintiff's arm.

Plaintiff contends that negligence may be inferred from the fact that the jolt was sufficiently violent to shake Mrs. Vandeveer from her hold on the seat beside her. This might depend on how tightly she was holding on. There is no evidence that she was holding on at all. Her own last word was, "I don't think I was."

Plaintiff relies upon *United Rys. & Electric Co. v. Phillips*, 129 Md. 328, 333, 99 A. 355, L. R. A. 1917C, 384, in which this court said, "The jerk or lurch of the car as described by the plaintiff in this case, judged by its results upon her and upon the other passengers, and apart from the adjectives used by her is describing it, shows it to have been of an unusual and extraordinary character, and so out of the ordinary as to suggest negligence in the management or control of the particular car." The opinion stated the plaintiff's description of the jerk or lurch thus, "When asked why she called the jerking sudden and unusual, she said: 'You know often when a car starts there is a little jerk, and you have to be prepared for this, but this was such a violent jerk that it caused the passengers to scream, "Oh!," and it swayed me forward and threw me down on my knees. * * * The conductor knew I fell, the crash was terrific, and everybody in the car heard it. It was as though you would tear a big piece of muslin, and he came to me and said "are you hurt?" and I said, I don't know, but "I think there is something the matter with my knee" ' ". 129 Md. 331, 99 A. 357. The spontaneous scream of the other passengers is in striking contrast with the absence of evidence in the instant case that any one else in the crowded car was affected by the jolt.

A small part of the testimony quoted by us was, on motion of defendant, stricken out. Assuming, without

deciding, that it should not have been stricken out, we find no evidence legally sufficient to show negligence of defendant.

*Judgment affirmed with costs.*