## BOND *v.* FORTHUBER

[No. 28, October Term, 1951.]

*Decided December 5, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Sigmund Levin,* with whom were *Paul Berman* and *Theodore B. Berman* on the brief, for the appellant.

*Max Sokol,* with whom were *Leon H. A. Pierson, Emanuel H. Horn, Deeley K. Nice* and *Dickerson, Nice & Sokol* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a judgment for defendant in a personal injury negligence case. Plaintiff, while crossing on foot Harford Road near Glendale Avenue, was struck by an automobile owned and operated by defendant.

Harford Road actually runs northeast and southwest. In the record directions are (and in this opinion will be) referred to as if Harford Road ran north and south and perpendicular streets east and west.

Glendale Avenue runs both east and west from Harford Road, but not in continuous straight lines. West of Harford Road it is perpendicular and is thirty feet wide, from curb to curb, with sidewalks ten feet wide on the north side, nine feet four inches on the south. East of Harford Road it runs slightly north of perpendicular, and is twenty-four feet wide, with sidewalks apparently nine feet eight inches wide. Immediately east of Harford Road the north curb of Glendale Avenue is slightly north of a straight prolongation of the south building line of Glendale Avenue west of Harford Road. Harford Road is sixty-eight feet five inches wide, twenty-two feet nine inches from the north curb, twenty-two feet eleven inches from the south, to double street car tracks, twelve feet between the north and south bound tracks, and five feet four and one-half inches between the two rails of each.

"181. (Pedestrians' Right-of-Way at Crosswalks.) (a) All pedestrians shall have the right-of-way at street crossings in the towns and cities of this State, except where traffic is controlled at such crossings by traffic officers, or traffic control devices. Between street crossings in such towns and cities, vehicles shall have the right-of-way." Code, 1947 Supp., Art. 66½, sec. 181 (a). There is no statutory definition of "street crossing" other

than the definition of "crosswalk", "Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other marking on the surface or that portion of a roadway ordinarily included within the prolongation or connection of the lateral lines of sidewalks at intersections." Art. 66½, sec. 2(a), (9). There is a crosswalk, ten feet wide, marked by the usual lines painted white on the roadway, almost perpendicular to Harford Road, from points on the west side near the south building line and the south curb line of Glendale Avenue to points on the east side near the north curb line and north of the north building line of Glendale Avenue. Thus the only "marked" crosswalk runs from the northeast to the southwest corner, across the lines of through traffic in both directions on both Harford Road and Glendale Avenue.

Defendant contends that this "marked" crosswalk was the only crosswalk or "street crossing" at Harford Road and Glendale Avenue and that the marking of this crosswalk excluded the existence of any "unmarked" crosswalk. Plaintiff contends that this "marked" crosswalk was only an additional crosswalk and that the marking of it did not put an end to "unmarked" crosswalks at "that portion of [the] roadway ordinarily included within [1] the prolongation or [2] connection of the lateral lines of sidewalks at intersections", especially since the "marked" crosswalk does not permit crossing either street without crossing both. (Bracketed numbers supplied.) Plaintiff apparently assumes that the statute, as applied to such an irregular crossing, may be construed as limiting the "unmarked" crosswalks to the "prolongation", excluding the "connection", of sidewalk lines, thus recognizing two, not four, "unmarked" crossings of Harford Road. The trial judge did not adopt either plaintiff's or defendant's construction of the statute, but left to the jury, as a question of fact, the existence of an "unmarked" crosswalk within the prolongation of the north sidewalk lines of Glendale Avenue west of Harford Road. Plaintiff contends that in this respect

the charge was erroneous, in effect left a question of law to the jury, and was prejudicial to plaintiff. Defendant moved for a directed verdict; his motion was denied. The verdict was for defendant. The view we take of the facts makes it unneessary to pass upon the opposing contentions as to construction of the statute with respect to "unmarked" crosswalks. For present purposes we may assume that there was an "unmarked" crossway within the prolongation of the north sidewalk lines of Glendale Avenue.

As to the happening of the accident plaintiff and defendant were the only witnesses. If plaintiff's own testimony, together with any of defendant's testimony, or legitimate inferences therefrom, favorable to plaintiff, is legally insufficient to show that negligence of defendant was a proximate cause of the accident, or affirmatively shows that negligence of plaintiff directly caused or contributed to the accident, then defendant's motion for a directed verdict should have been granted, and the jury's verdict was correct, whether correctly arrived at or not. *Goldman v. Johnson Motor Lines*, 192 Md. 24, 35, 63 A. 2d 622. The accident occurred in daylight, about 5:15 p.m. on October 12, 1949. Harford Road is a boulevard highway. Defendant had been driving his Ford station wagon on Glendale Avenue, east to Harford Road. He testified that, after stopping at Harford Road for traffic to pass, he entered Harford Road, to the right of the centre of Glendale Avenue, and turned north up Harford Road at the easternmost rail of the northbound track, and "had proceeded possibly thirty or forty feet" when he first saw plaintiff about six feet north (and ten feet east) of him, coming toward him in a southwesterly [apparently westsouthwesterly] direction, immediately applied his brakes and came to a stop within the length of his car, but not before plaintiff's left knee collided with his right front bumper. The knee was later found to have been broken.

Plaintiff had driven his car north on Harford Road and had parked it on the east side, north of the northeast

corner of Glendale Avenue. He testified that: He intended to go to the Food Fair on the southwest corner, but first to cross Harford Road to the northwest corner [where the Glendale Motors building is]. His car was parked "just past [north of] Glendale Avenue". He got out of his car, on the left side, walked "about five or six or maybe seven feet" north "to approximately opposite the sidewalk * * * on the northwest corner of Glendale Avenue", and waited several minutes for the traffic to clear. His "was the last [southernmost] car parked north of Glendale Avenue. The rear of his car "was across the sidewalk of Glendale Avenue". [On cross-examination], the rear of his car was about five feet north of the "marked" crossway at the northeast corner of Glendale Avenue; "the center of my automobile was about in the center of Glendale Avenue, coming from the west;" the left front door of his car was about ten feet north of the "marked" crossway; he walked from his car north "for several feet, is all I can say. * * * I don't know how many feet. * * * I would say five or ten feet past the front of it". When cross-examined regarding a pre-trial deposition, he ascribed some discrepancy between his deposition and his testimony to the fact that in the deposition he was "speaking from memory" and "did not have any plat then". In the deposition he said, "the front of my car * * * was on a line with [the Glendale Motors] building * * * [at] the south line of their building" [i. e., the north building line of Glendale Avenue west of Harford Road]. On cross-examination at the trial, when asked, "And is it your testimony now also, * * * that your automobile was at the south line of the building of the Glendale Motors"?, he said, "I don't really know. I don't really know, sir. It was somewhere north of Glendale Avenue before you get to the building." In the deposition he said he was standing right alongside his car for several minutes, he "waited until traffic cleared and started to cross the street", and said nothing about walking north. At the trial, when asked, "Now, didn't you walk straight over

from the front of your automobile?", he said, "Well, I don't really know". This answer was not qualified or explained on redirect examination or otherwise.

Plaintiff also testified that in crossing Harford Road he got a little west of the inner rail of the northbound track [*i.e.*, into the space between the north and south bound tracks], when he was struck by defendant's automobile; "it knocked me down" [he does not say it threw him any distance]; "it hit me on my left knee and on my right hand; it knocked me down and tore the seat of my pants;" he was facing the machine, lying on his back, four or five or six feet north of the machine; he saw the automobile "maybe a foot [on cross-examination, "one, two or three", "approximately one foot"] before it hit me"; * * * "I was looking south until I reached the center of the street and then looked north." Defendant testified that plaintiff "was looking north when I first saw him and then he turned around and saw me all at the same time"; defendant's car and plaintiff, when they collided, were in the north bound track; plaintiff was not knocked "off his feet", but was still standing when defendant got out of his car; plaintiff then sat down in the road about four feet from the car; plaintiff's car was parked north of the place of the collision.

Plaintiff's testimony is legally insufficient to show that he was in the "unmarked crossing" and had the right of way when he was struck. The nearest he came to saying that he was in the "unmarked" crossing was that he walked from his car north in the street "to approximately opposite the sidewalk * * * on the northwest corner." His other uncertain and contradictory statements cover a considerable distance north and south of the "unmarked" crosswalk. In thus referring to his testimony we would not overemphasize his estimates of distance or ascribe to them mathematical exactness of which they are not susceptible. ( *Charlton Brothers Transportation Co. v. Garrettson*, 188 Md. 85, 92, 51 A. 2d 642)—though allowance for error cannot make facts out of testimony that is too vague or contradictory to

prove anything. Plaintiff's statements as to relative positions of his automobile and visible fixed objects on the east or the west side of Harford Road are more—or less—than mathematically inexact. We may assume that the rule *de minimis* would cover the fact that plaintiff did not walk from the sidewalk but said he walked north in the street till he reached (if at all) the crosswalk. But if plaintiff, while walking "between crossings" had stepped on the "unmarked" crosswalk just when or before defendant arrived there, he would not thereby have the right of way at the time of the collision. Whether plaintiff had the right of way in the "unmarked" crosswalk depends upon (1) where he parked his car and (2) where he walked from his car. On either point, the summation of his testimony is his own last words, "I don't really know". In testifying plaintiff marked on the plat in evidence his location of defendant's car at the moment of the collision. Only the right hand rear end of the car, as so marked, is within the "unmarked" crosswalk. "In passing upon the legal sufficiency of the evidence we must, of course, assume the truth of the evidence, and all permissible inferences, most favorable to plaintiff. If the testimony of one witness at the trial is legally sufficient, it matters not that this testimony may be contradicted by ten witnesses for defendant, or even that it may be in conflict with statements before the trial, or testimony in a previous trial or other legal proceeding, of the same witness. *Baltimore Transit Co. v. State, for use of Castranda,* 194 Md. 421, 433, 71 A. 2d 442, 446-447; *Foble v. Knefely,* 176 Md. 474, 484-485, 6 A. 2d 48, 122 A. L. R. 831, and cases cited. But if any witness's testimony is itself so contradictory that it has no probative force, a jury cannot be invited to speculate about it or to select one or another contradictory statement as the basis of a verdict. *Eisenhower v. Baltimore Transit Co.,* 190 Md. 528, 537-538, 59 A. 2d 313, and cases cited. Testimony at the trial which is later corrected by the witness cannot go to the jury as against the later correction." *Kaufman v. Baltimore*

*Transit Co.,* 197 Md. 141, 145, 78 A. 2d 464, 466.

It is not negligence *per se* for a pedestrian to cross "between crossings" or a motorist to cross a crosswalk, but either of these operations requires a high degree of care. *Legum v. State,* 167 Md. 339, 173 A. 565. If plaintiff's testimony fails (as we find it does) to show that he was walking in the crosswalk, it shows, *e. g.,* from the fact that he did not see defendant's car until it was within "approximately one foot" of him, that he exercised no care at all in this undertaking.

Plaintiff contends that there is evidence sufficient to go to the jury on the "last clear chance" doctrine. This contention is based on unwarranted interpretations of testimony and computations from testimony and from the plat, to show that defendant, in his testimony as to distance, contradicted himself as to where defendant was when he first saw plaintiff. We find no such contradiction—or basis for a jury to find contradiction—in defendant's testimony. Nor do we suggest that if defendant had seen plaintiff earlier, he would have been under obligation to assume that plaintiff would walk into or in front of defendant's car. *Legum v. State, supra.* Collision between plaintiff's knee and a moving automobile, however slowly moving, was sufficient to break the knee, a serious injury. Nevertheless the promptness with which defendant's car came to a stop, according to either plaintiff's or defendant's testimony, suggests that defendant was on the lookout and had his car well under control.

As defendant's motion for a directed verdict should have been granted, the judgment on the jury's verdict for defendant is free from error. Objection to exclusion of testimony is immaterial, as the excluded testimony could not have changed the result.

*Judgment affirmed, with costs.*